ALBERTO CIRELLI, PLAINTIFF-RESPONDENT-CROSS-APPELLANT, v. THE OHIO CASUALTY INSURANCE CO., DEFENDANT-APPELLANT-CROSS-RESPONDENT, AND RICHARD C. McDONOUGH, NEW JERSEY COMMISSIONER OF INSURANCE, DEFENDANT-RESPONDENT.

Argued November 8, 1976—Decided February 28, 1977.

*Mr. Elliott Abrutyn* argued the cause for appellant-cross-respondent (*Messrs. Morgan, Melhuish, Monaghan, McCoid and Spielvogel,* attorneys).

*Mr. Charles F. Krause, III,* argued the cause for respondent-cross-appellant (*Messrs. Riemenschneider, Krause and Vion,* attorneys).

*Ms. Maureen McGrath,* Deputy Attorney General, filed a statement in lieu of brief on behalf of respondent Richard C. McDonough (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

SCHREIBER, J. The primary issue in this case concerns the validity of reimbursement and subrogation provisions in an automobile liability insurance policy with respect to personal injury benefits paid to the assured as required by the New Jersey Automobile Reparation Reform Act (No Fault Law), *N. J. S. A.* 39:6A–1 *et seq.*

The facts are undisputed. The plaintiff Alberto Cirelli, while a passenger in an automobile owned by him and driven by his son, Emilio Cirelli, was injured when his car collided with a vehicle owned by Mary Natelli and operated by her husband Thomas. The accident occurred in Clarkestown, New York on March 1, 1974. Cirelli was a New Jersey resident and his liability insurance carrier was the defendant, The Ohio Casualty Insurance Co. (Ohio). The Natellis, New York residents, were insured by Boston Old Colony Insurance Co. (Boston).

Ohio's policy included an endorsement which provided for personal injury protection (PIP), a requirement of the New Jersey No Fault Law. Accordingly, Ohio was bound, *inter alia,* to pay its insured Cirelli for *all* reasonable medical expenses (his hospital and medical expenses exceeded $120,000) and wage losses (subject to a weekly maximum payment of $100 and gross limit of $5200). *N. J. S. A.* 39:6A–4. Ohio claimed that, since the accident had occurred in New York and the New York No Fault Law[1] limited the insurance company's liability for personal injury protection to $50,000, its exposure did not exceed that amount. N. Y. *Ins. Law* §§ 671, 672 (McKinney). Therefore, Ohio refused to pay more than $50,000 toward the hospital and medical expenses.

The Ohio PIP endorsement also provided that the company would be subrogated, to the extent of PIP payments made, to Cirelli's rights against a third person. The endorse-

---

[1]The New York act is entitled Comprehensive Automobile Insurance Reparations Act, N. Y. *Ins. Law* § 670 (McKinney).

ment also required Cirelli to reimburse Ohio from the proceeds of "any settlement or judgment" that Cirelli recovered from the tortfeasor who was responsible for the accident.

Cirelli[2] instituted a declaratory judgment proceeding against Ohio in which he sought an adjudication that Ohio was responsible for PIP expenses in excess of $50,000 and that the reimbursement provisions were invalid.[3]

The trial court, in a written opinion, 133 *N. J. Super.* 492 (Law Div. 1975), found that Ohio was not entitled to the benefit of the $50,000 New York statutory limitation. The defendant is not pressing this issue on this appeal and we shall not discuss it beyond stating our conclusion that we fully concur with the trial court's determination. The court also concluded that the reimbursement provisions were unenforceable because they were repugnant to the provisions and intent of the New Jersey PIP benefits, but that Cirelli was obligated to reimburse Ohio for any medical expenses which he might recover from Natelli. The trial court also ordered Ohio to pay plaintiff's counsel a legal fee of $5,000 for services rendered in connection with the issue concerning the New York monetary ceiling, but not with respect to fees involved in the reimbursement aspect of the case.

Ohio filed an appeal in which it challenged the finding of invalidity of the reimbursement agreement and the awarding of the counsel fee. Upon motion, the matter not having been heard by the Appellate Division, we granted certification, *R.* 2 :12–2. 69 *N. J.* 448.

I

The counsel fee was awarded pursuant to *R.* 4 :42–9 (a)(6), which sanctions allowance of counsel fees in an action upon a liability or indemnity insurance policy in

---

[2]Cirelli died during the pendency of the suit and the executrix of his estate was substituted as the plaintiff.

[3]Cirelli contemplated seeking damages from Natelli in New York.

favor of a successful claimant. However, since the No Fault Law does not provide for counsel fees, Ohio asserts that the court may not by rule provide for such fees, that the particularization of suits predicated upon liability and indemnity insurance policy cases is an arbitrary and unreasonable classification and therefore is unconstitutional, and that in any event the fee was excessive. We find no merit in any of these contentions. It is well-settled that courts may fix counsel fees and appropriate criteria to that end may be established by the Supreme Court pursuant to its rule making power, *Liberty Title & Trust Co. v. Plews,* 6 *N. J.* 28, 43 (1950); that selection of actions on liability or indemnity insurance policies in which counsel fees may be awarded is a reasonable classification, *N. J. Manufacturers Ins. Co. v. Consolidated,* 124 *N. J. Super.* 598, 600–601 (Law Div. 1973), and *Felicetta v. Commercial Union Ins. Co.,* 117 *N. J. Super.* 524, 528 (App. Div. 1971), certif. den. 60 *N. J.* 141 (1972); and that examination of the affidavit of services confirms the reasonableness of the trial court's judgment in fixing the amount of the fee.

## II

■ The No Fault Law grants an insurer paying PIP benefits subrogation rights, exercisable by intercompany arbitration, against only the insurer of the tortfeasor. *N. J. S. A.* 39:6A–9. However, the same section provides that it shall be inoperative after December 31, 1974. This has been held to mean that subrogation rights have been extinguished with respect to accidents occurring after that date. *Pa. Mfrs. Assn. Ins. Co. v. Gov't Emp. Ins. Co.,* 136 *N. J. Super.* 491, 498 (App. Div. 1975), aff'd o. b. this day 72 *N. J.* 348.

Since the accident in the present case occurred prior to January 1, 1975, the defendant's subrogation rights are required to be evaluated in accordance with *N. J. S. A.* 39:6A–9, providing for intercompany arbitration. Plaintiff con-

tends that the defendant is restricted to that subrogation remedy. Defendant's position is that the intercompany arbitration provision of the statutory section could have been intended to be applicable only where both vehicles involved in the accident are New Jersey vehicles insured under the requirements of New Jersey law, including the No Fault Law. It is doubtful, as contended by defendant, that our Legislature has power to compel an out of state insurer covering an out of state motor vehicle for tort liability to arbitrate with the New Jersey resident's no fault carrier the issue of the incidence and amount of such liability, particularly where the accident occurs outside this State. Therefore, mandatory intercompany arbitration cannot reasonably have been in contemplation in such case.

The question then arises whether, as to pre-January 1975 accidents involving out of state accidents with foreign vehicles, there is a statutory or other policy precluding the enforcement of such a subrogation agreement as contained in the instant policy — if consistent with full recourse by plaintiff to the liability to him for all his damages of any third person or insurer thereof. For reasons to be stated, we would answer that question in the negative and we would regard the pertinent considerations as similar to those applicable as to accidents occurring after December 31, 1974, when *N. J. S. A.* 39:6A–9 became inoperative.

Preliminarily, we agree with the trial court that in general the "rationale of the act involves a plan by which each insurance carrier undertakes the payment of P.I.P. benefits to its assured regardless of fault and, as of January 1, 1975, without the cumbersome and uneconomic shifting of dollars from one insurance company to another through the means of subrogation." 133 *N. J. Super.* at 498. But this policy contemplated situations where New Jersey vehicles (those registered or principally garaged in this State, *N. J. S. A.* 39:6A–3) were involved and the insurance policies related to those vehicles were subject to the requirements of the No

Fault Law. *Iavicoli*,[4] *No Fault & Comparative Negligence in New Jersey* (1973), explains that the Legislature decided to eliminate subrogation because:

Spokesmen for the insurance industry expressed reluctance as to the economic benefit of subrogation in that it results in the shifting of dollars and papers among insurers with little to be gained. [*Id.* at 117].

A corollary of this principle was the statutory recognition that the injured person who was the beneficiary of the PIP payments could not and should not recover from the tortfeasor the medical, hospital and other losses for which he had already been reimbursed. *See N. J. S. A.* 39:6A–12. Otherwise he would have been unduly enriched by double recovery of those expenses.

However, where the accident occurs outside New Jersey and a New Jersey and an out of state vehicle are involved, the predicate for the PIP provisions preventing subrogation does not exist. Elimination of subrogation rights among New Jersey carriers may operate to reduce premium costs because of reduced administrative expenses, including counsel fees. This factor may be absent when an out of state insurance carrier is involved. The shifting of dollars among New Jersey and out of state carriers may be an element in fixing the cost of automobile liability policies in New Jersey. If insurers of New Jersey vehicles are deprived of subrogation rights, liability carriers in foreign jurisdictions may reap an unjustifiable benefit. In other words the New Jersey insurance company could not collect from the New York tortfeasor or his insurance carrier. Those out of state insurance companies in turn may not be subject to such deprivation in favor of the New Jersey carrier. The Legislature certainly

---

[4]Mario Iavicoli served as legal counsel to the Automobile Insurance Study Commission, J. Res. No. 4, 194th Leg. (1970), and drafted the Commission's recommendations which were the basis for the No Fault Law as enacted.

did not intend that New Jersey residents should subsidize residents of other jurisdictions.[5] *See generally N. J. Builders, Owners and Managers Association v. Blair,* 60 *N. J.* 330, 338–339 (1972).

■■ Furthermore, the injured person might be able to maintain an action in the foreign jurisdiction for recovery of the *same* expenses and losses for which he had been paid under PIP. Double recovery is, of course, contrary to the policy enunciated in the New Jersey No Fault Law. *See N. J. S. A.* 39:6A–12. There is no justification for depriving Ohio of its subrogation rights against Natelli (Boston) or the benefits of the reimbursement agreement with Cirelli, provided that Cirelli's recovery for pain, suffering, disability and other losses (which have not been received from Ohio under PIP) from Natelli (Boston) is not diminished by Ohio's subrogation or reimbursement.[6] We are in full accord with the trial court that Ohio's recovery may not be permitted to reduce those funds to which Cirelli is entitled in order to make him whole. 133 *N. J. Super.* at 500. *Accord, Iavicoli, supra* at 118.

■ The trial court invalidated the reimbursement agreement *for all purposes.* We agree with that holding insofar as New Jersey accidents involving insured New Jersey vehicles are concerned. But where an accident occurs outside the state between a New Jersey vehicle and a vehicle from another jurisdiction, the reimbursement and subrogation provisions are a safeguard against double recovery of medical and other expenses which have been provided and paid for under PIP. Furthermore, we hold that the insurance company's subrogation rights against the out of state vehicle are valid. Invalidation of those rights would probably deprive the carrier

---

[5]The New York statute provides that where a non-covered vehicle is involved, the carrier who pays the basic loss has a lien on any subsequent recovery by the insured. N. Y. *Ins. Law* § 673.2 (McKinney).

[6]N. Y. *Ins. Law* § 674 and § 676 (McKinney).

of any subrogation rights. 3 *Appleman, Insurance Law and Practice,* § 1675, at 495–497 (1967). To the extent that such reimbursement and subrogation provisions do not conflict with the purposes of the No Fault Law, these policy conditions are valid and effective. In all other respects, we agree with the decision below.

Affirmed as modified.

*For affirmance as modified* — Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For reversal*—None.