190 N.J. Super. 605 (1983)
464 A.2d 1197
FEDERAL INSURANCE COMPANY, CHUBB/PACIFIC INDEMNITY GROUP, DEFENDANT-THIRD PARTY PLAINTIFF-APPELLANT,
v.
LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANT-THIRD PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 1983.
Decided August 3, 1983.
*606 Before Judges BOTTER, POLOW and BRODY.
John J. Scanlon argued the cause for appellant.
John F. O'Donnell argued the cause for respondent (Joan B. Sherman, attorney; John F. O'Donnell, on the brief).
The opinion of the court was delivered by BOTTER, P.J.A.D.
This appeal involves a dispute between two insurance companies over the obligation for PIP (personal injury protection) benefits claimed by plaintiff, Dr. Ellmers, who was injured in a one-car accident. At the time, Dr. Ellmers was driving a leased car insured by Liberty Mutual Insurance Company (Liberty). By operation of law, N.J.S.A. 39:6A-2(g), he was also a named insured under the Federal Insurance Company (Federal) policy covering a car owned by his wife. The main issue on this appeal is whether Federal has the primary obligation for PIP benefits owed to Dr. Ellmers under the no-fault law (N.J.S.A. 39:6A-1 et seq.), or whether N.J.S.A. 39:6A-11 requires that the obligation *607 be shared between Federal and Liberty. On cross-motions for summary judgment brought by the third-party plaintiff and third-party defendant, the trial judge held that the PIP coverage provided under the Federal policy was "primary coverage" and that the PIP coverage under the Liberty policy was "secondary coverage." This appeal followed,[1] and we now reverse.
The facts in this case are not in dispute. On January 8, 1978, Dr. Ellmers was driving a car which he had leased from Mullane Ford (Mullane) of Bergenfield, New Jersey. The car was covered by Liberty's insurance policy issued to The Ford Motor Company and other insureds, probably including the lessor, Mullane. The record is unclear as to the other named insureds on the Liberty policy but the case was decided on the premise that Dr. Ellmers was not a named insured on that policy. The Liberty policy did contain the "basic" New Jersey PIP endorsement. Dr. Ellmers was a named insured on Federal's policy issued to his wife. N.J.S.A. 39:6A-2(g) defines the term "named insured" to include the person identified in the policy as the insured and "if an individual, his or her spouse."
After the accident, Federal paid Dr. Ellmers approximately $23,000 in PIP benefits and then discontinued payments.[2] Dr. *608 Ellmers sued Federal for unpaid benefits which he claimed were due him, and Federal asserted a claim against third-party defendant Liberty. By amended complaint, plaintiff made claim against both insurance companies. The Federal policy contained optional additional PIP coverage made available pursuant to N.J.S.A. 39:6A-10. The Liberty policy did not contain such expanded coverage, but as noted above, it did contain the "basic" coverage required by N.J.S.A. 39:6A-4. The effect of the decision below was that Federal's coverage would have to be exhausted before Liberty became obligated to pay any additional unpaid PIP benefits to plaintiff.
Under N.J.S.A. 39:6A-4, every automobile liability insurance policy issued in this state for liability arising out of the ownership, operation, maintenance or use of an automobile must provide for payment of PIP benefits without regard to fault. Coverage is afforded to the named insured and family members residing in his household who are injured in an accident involving any automobile. Also covered are other persons who are injured while occupying or using the named insured's automobile with his permission as well as pedestrians injured by the named insured's automobile or struck by an object propelled by or from that automobile. Thus, under the no-fault law, as the driver of the rented car which was registered in New Jersey, Dr. Ellmers was covered for PIP benefits by Liberty. As a named insured he was also covered by the Federal policy. Nothing in the no-fault law expresses a priority in the order of payment from one insurer or another.[3] On the contrary, N.J.S.A. 39:6A-11 (section 11) provides for a sharing of the obligation for PIP *609 benefits among "two or more insurers who are liable to pay" such benefits.[4]N.J.S.A. 39:6A-11 provides in full as follows:
39:6A-11. Contribution among insurers.
If two or more insurers are liable to pay benefits under sections 4 and 10 of this act for the same bodily injury, or death, of any one person, the maximum amount payable shall be as specified in sections 4 and 10 if additional first party coverage applies and any insurer paying the benefits shall be entitled to recover from each of the other insurers, only by inter-company arbitration or inter-company agreement, an equitable pro-rata share of the benefits paid.
This statute has previously been interpreted by this court in Selected Risks Ins. Co. v. Allstate Ins. Co., 179 N.J. Super. 444, 449 (App.Div. 1981), certif. den. 88 N.J. 489 (1981). There we said that the statute was "clear on its face" and contained "no provisions ... for relegating one insurer to a classification as the primary insurer and another as a secondary insurer." 179 N.J. Super. at 449. The opinion in Selected Risks reasoned that the Legislature must have known that individuals with their own insurance would be living in family households in which other members had separate automobile insurance, creating multiple coverage for all household family members. As our later discussion will show, such coverage may be referred to as first-party coverage in the traditional sense. The court in Selected Risks concluded that, in the face of such multiple coverage, rather than establish priorities in liability for PIP benefits, the Legislature in section 11 provided for a sharing of losses on "an equitable pro-rata" basis by inter-company agreement or arbitration.
The holding in Selected Risks is quite persuasive. Before discussing the rationale for a different conclusion, we should note that in Selected Risks one insurer paid PIP benefits to its own injured insured and sought a 50% contribution by arbitration from the company whose insurance policy covered the mother of the injured insured who resided with him. This is a typical case of first-party coverage, since the coverage for the *610 injured insured afforded by his mother's policy had nothing to do with any possible liability that the mother would have for such injuries. First-party coverage is said to be coverage for an insured's own loss or injury, including medical expense or property damage, in contrast to third-party coverage which insures against liability of the insured for injury to a third party or his property. Reese v. State Farm Mut. Auto. Ins. Co., 285 Md. 548, 551-552, 403 A.2d 1229, 1231-1232 (Ct.App. 1979). PIP coverage is generally referred to as first-party coverage. Garden State Fire & Casualty Co. v. Commercial Union Ins. Co., 176 N.J. Super. 301, 304-306 (App.Div. 1980) (holding that a carrier providing excess liability coverage without provision for paying "first-party PIP benefits" was not liable to the injured person's "primary carrier" who paid PIP benefits). See also N.J.S.A. 39:6A-10 and -11 which use the term "first-party coverage" in connection with additional limits of PIP benefits which are available on an optional basis.
There is some evidence that conflicts with the view that section 11 intended a sharing of PIP benefits paid to all classes of claimants among all carriers that might be liable. Pursuant to the authority of N.J.S.A. 39:6A-19, the Commissioner of Insurance issued a regulation, N.J.A.C. 11:3-7.4, not discussed in Selected Risks, supra, which states:
The policy form or endorsement providing the personal injury protection benefits shall provide that Section 4 benefits shall be afforded by the insurer of the injured person.
This regulation is not clear, since the "insurer of the injured person" could be any carrier liable for PIP benefits. At most the regulation implies that the insured's own insurer is the primary obligor. Nevertheless, the regulation has been interpreted to mean that the primary obligation for PIP benefits falls upon the carrier issuing a policy in which the injured person is a named insured or a family member of his household, since such persons are covered regardless of the vehicle causing their injury. Mario A. Iavicoli, formerly counsel to the Automobile Insurance Study Commission (Cirelli v. The Ohio Casualty Ins. Co., 72 N.J. 380, 387, n. 4 (1977)), writes:

*611 An insurer's obligation to make benefit payments on a primary basis or secondary basis has been the subject of regulation by the Commissioner of Insurance. The Commissioner has promulgated regulations which provide that in the event multiple insurance policies extend coverage to an injured individual, the primary coverage will be extended to such injured individual by that insurer whose policy identifies the injured individual in question as the named insured (or his relative) within such insurer's policy [citing N.J.A.C. 11:3-7.4]. Other insurance policies which extend coverage to the injured individual are secondary coverage whenever the injured individualis not a named insured (or his relative) within such other insurance policies. Whenever the injured individual is not a named insured (or his relative) in any of the insurance policies which extend coverage to such injured individual, then in such event such policies extending insurance to such injured individual are primary coverage. [Iavicoli, No Fault & Comparative Negligence in New Jersey, § 10 at 38-39 (1973).]
Referring apparently to endorsements submitted by insurers which have not been disapproved by the Commissioner of Insurance, Mr. Iavicoli goes on to say:
The Commissioner of Insurance has approved the following language which is to be inserted in basic personal injury protection coverage endorsements in order to determine primary or secondary coverage: `This insurance applies on a primary basis to bodily injury to the named insured and his relative[s] and on a secondary basis to all other eligible injured persons.' [Id. at 39]
We know that the Liberty policy in the case at hand has the identical language in its PIP endorsement.[5] Clearly, this approach appears to be inconsistent with the plain meaning of section 11. Also, section 11 appears to depart from the recommended *612 uniform law which was approved in 1972 by the National Conference of Commissioners on Uniform State Laws. (Our no-fault law was adopted in June 1972 to take effect on January 1, 1973. L. 1972, c. 70, § 19.) Thus, it is difficult to say that the Legislature intended to make distinctions between classes of covered persons for the purpose of sharing PIP losses among carriers. Section 11 bears no hint of that intention. Yet it was adopted in its present form in the face of a known problem and known proposals for a different approach.
Still, N.J.A.C. 11:3-7.4, as apparently interpreted and applied in practice, suggests a contrary approach. There appears to be a common understanding that a person injured in an accident receives his PIP benefits from his own insurer, although he may be injured in a motor vehicle owned by someone else, as in the case at hand. See the Garden State Fire case, supra, 176 N.J. Super. at 305 ("... PIP coverage is first-party coverage. The intent of the No-Fault Law is that each automobile insurer should pay the medical expenses of its insured. It is the primary coverage.") See also Cirelli v. The Ohio Casualty Ins. Co., supra, 72 N.J. at 386 (the rationale of the no-fault law "involves a plan by which each insurance carrier undertakes the payment of P.I.P. benefits to its assured regardless of fault and, as of January 1, 1975, without the cumbersome and uneconomic shifting of dollars from one insurance company to another through the means of subrogation," referring to N.J.S.A. 39:6A-9). Similarly, after referring to N.J.A.C. 11:3-7.4, the judge in McKenna v. Wiskowski, 181 N.J. Super. 482, 487 (Ch.Div. 1981), said:
Under this [regulation], first party coverage is mandated in that each insured collects PIP benefits from his own insurer even if the insured is injured while a pedestrian. The insurer of an injured individual provides primary coverage and the insurer of an automobile provides secondary coverage. See Iavicoli, No *613 Fault & Comparative Negligence in New Jersey, 118-119 (1973). Therefore, PIP coverage provides first-party coverage  that is, each party primarily collects PIP benefits from his own insurer. See Cirelli v. Ohio Cas. Ins. Co., 72 N.J. 380, 386 (1977).
Except for the endorsement in the Liberty policy, the record contains no information about the practices in the insurance industry since the no-fault law went into effect on January 1, 1973. Apart from the holding in Selected Risks, supra, the cases describing the law's general concept have not confronted the provisions of section 11. This section was not mentioned by the trial judge in ruling on the summary judgment motions in this case, nor has it been mentioned in Federal's brief on this appeal.[6] Saying that a named insured or his relatives living in his household should seek benefits first from the named insured's carrier does not deal with that carrier's right to contribution from other insurers who are liable on the risk, although dictum concerning primary and secondary coverage implies a different result than we reach here. Although Iavicoli refers to N.J.S.A. 39:6A-11 in Section 51 of his text, No Fault & Comparative Negligence in New Jersey, supra, at 120-121, he interprets N.J.A.C. 11:3-7.4 as establishing a named insured's policy as primary for PIP payments to himself and family members of his household, saying that such persons can recover "only from the insurance company providing insurance coverage for their own personal automobile." Such a provision and provisions for priority in payments were included in section 10 of one version of the legislation, Assembly Bill No. 675, 1972, but this section was not incorporated in the final version that was enacted.
Section 11 establishes no priorities among insurers having a common liability for PIP coverage to an injured person. The use of the term "first-party coverage" in the act in sections 10 and 11 may suggest a more direct responsibility to a carrier's own insured, but other classes of claimants (drivers, occupants and pedestrians) designated in N.J.S.A. 39:6A-4 are afforded *614 what is in effect first party coverage by the carrier covering the automobile which causes their injury, regardless of the liability of the owner or driver of that vehicle. A system of priorities would have to consider many variations. Spouses are "named insureds" under policies separately issued on their respective cars. N.J.S.A. 39:6A-2(g); Matland v. United Services Automobile Ass'n, 174 N.J. Super. 499 (Law Div. 1980). If a married person receives benefits from his own carrier, is that carrier entitled to contribution from another carrier covering his spouse's vehicle? As a named insured under both policies it is difficult to say that one company has only secondary liability. A distinction is more easily made when a pedestrian or the occupant of a vehicle unrelated to the vehicle's owner is a named insured under his own policy covering a different vehicle. But section 11 makes none of those distinctions. It merely provides that any insurer shall be entitled to contribution from another insurer by inter-company agreement or arbitration, whenever "two or more insurers are liable to pay benefits" for the same injury to any one person. The statute ignores all differences in categories of insurers and claimants. Thus, we conclude, as did the court in Selected Risks, supra, dealing with insurers of family members residing in the same household, that Federal is entitled to contribution from Liberty in this case, even though Dr. Ellmers was not a named insured of the Liberty policy but was a named insured under the Federal policy. To the extent that the regulation, N.J.A.C. 11:3-7.4, and the provisions of the Liberty policy conflict with this result, n. 5 supra, those provisions are invalidated. Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 286 (1974).
We reject Federal's second contention that the Liberty policy must be construed as if it afforded additional benefits pursuant to N.J.S.A. 39:6A-10 (section 10), supplementing the "basic" benefits required by N.J.S.A. 39:6A-4. Federal argues that, as a long-term lessee of the Mullane vehicle, Dr. Ellmers should be deemed the "named insured" within the meaning of section 10 to whom additional insurance must be offered. This *615 conflicts with the definition of the term "named insured." N.J.S.A. 39:6A-2(g). We are not privileged to redefine the term according to our own sense of what is right, equitable and just. The renter of a vehicle can ask to be listed as a named insured in the policy covering the vehicle, at which time he will have all the statutory rights of a named insured. Any change in the definition will have to come from the Legislature.
Liberty argues that Dr. Ellmers' claim was out of time under its policy conditions and that Federal has brought its claim in an improper forum, since section 11 provides for contribution only by inter-company arbitration or agreement. We do not pass on these issues. They were not considered below and do not appear to have been raised below. In any case, our grant of leave to appeal is intended solely for the purpose of dealing with the issue decided in the trial court by summary judgment.[7]
Reversed and remanded to the trial court for further proceedings to resolve issues not determined on this appeal.
NOTES
[1] We note that no judgment has been entered on the claim asserted by Dr. Ellmers against both defendants. Technically, this appeal is interlocutory. Leave to appeal was not sought as required by R. 2:5-6(a), and this appeal could be dismissed. Rybeck v. Rybeck, 150 N.J. Super. 151, 155 (App.Div.), certif. den. 75 N.J. 30 (1977). However, since the effect of the decision below resolves much of plaintiff's claim, and the subject matter is of general interest, we grant leave to appeal pursuant to R. 2:4-4(b)(2) and will consider the merits of the case. Moreover, the state of the case is such that delaying the appeal on the issues presented until after plaintiff's claims are resolved would unnecessarily postpone the ultimate resolution of the dispute.
[2] The record suggests that these payments were largely for income continuation benefits and that some medical expenses were unpaid at the time suit was commenced. Federal asserts in its brief that payments were discontinued when an examining doctor reported that Dr. Ellmers was able to return to work, but the record before us does not support this statement. Plaintiff's complaint sought benefits for income loss, medical expenses and essential services benefits which are part of the PIP benefits specified in N.J.S.A. 39:6A-4.
[3] This contrasts with § 4 of the Uniform Motor Vehicle Accident Reparations Act, 14 U.L.A. 61-62 (1972). Apart from carrier and employment situations, the insurance under which an injured person is a basic reparation insured has the first obligation, followed by the insurance covering a car in which a driver or occupant who is not a basic reparation insured is injured.
[4] The question of primary versus secondary coverage was expressly left open by the Supreme Court in a case involving uninsured motorist protection. Ciecka v. Transamerica Ins. Group., 81 N.J. 421, 429 (1979).
[5] The endorsement in the Liberty policy excludes duplication of PIP benefits and stacking beyond the limits provided in N.J.S.A. 39:6A-4. It provides further:

This insurance applies on a primary basis to bodily injury to the named insured and his relatives and on a secondary basis to all other eligible injured persons. Similarly, the basic personal injury protection coverage provided by other complying policies applies on a primary basis to bodily injury to those persons who are named insureds under such policies and their relatives. If an eligible injured person to whom this insurance applies on a secondary basis has other basic personal injury protection coverage under another complying policy applicable to his bodily injury on a primary basis, all claims for basic personal injury protection benefits shall first be made against the insurer issuing the other complying policy. No basic personal injury protection benefits shall be due and payable under this insurance unless the other insurer fails to pay such benefits by reason of insolvency and the company has been given written notice by the claimant of such failure. `Complying policy' means a policy of automobile liability insurance maintained pursuant to the requirements of Section 3 of the New Jersey Automobile Reparation Reform Act and providing basic personal injury protection coverage as approved by the Commissioner of Insurance.
[6] The Selected Risks case was not decided at the time the trial judge rendered his oral opinion.
[7] The record does not show that Federal's second point concerning section 10 coverage was raised or considered below. However, we decided this issue as a matter of law to avoid the need to determine on remand if Dr. Ellmers had been offered additional section 10 coverage.