213 N.J. Super. 70 (1986)
516 A.2d 287
ZENTA LONGWORTH, PLAINTIFF,
v.
THE OHIO CASUALTY GROUP OF INSURANCE COMPANIES, DEFENDANTS.
Superior Court of New Jersey, Law Division Morris County.
Decided August 11, 1986.
*73 William J. Vosper, Jr. for plaintiff (Purcell & Vosper, attorneys; William J. Vosper, Jr. on the brief).
Alan H. Bernstein for the defendant (Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, attorneys; Alan H. Bernstein on the brief).
James D. Bride for amicus curiae Allstate Insurance Company (W. Stephen Leary, attorneys; James D. Bride on the brief).
GASCOYNE, P.J.Cv.
This is a case of first impression in New Jersey. The matter comes before the court by way of plaintiff's motion for partial summary judgment. Plaintiff seeks an adjudication of the validity of the "Reimbursement and Trust Agreement" clause contained in defendant-insurer's policy providing under insured motorist coverage. Defendant filed a cross-motion seeking a dismissal of the complaint on the grounds that this action is subject to arbitration. Defendant also seeks a stay of the underlying tort action pending the arbitration proceeding.
The within declaratory judgment action and separate pending liability action entitled Longworth v. Van Houten, bearing docket number L-00323-84, arise out of an automobile accident. The collision occurred on June 7, 1983. A vehicle driven by Peter Van Houten struck the vehicle driven by Zenta Longworth in the rear. Zenta Longworth is the plaintiff herein.
Peter Van Houten is insured by Allstate Insurance Co. (Allstate). Zenta Longworth is insured by defendant herein, the Ohio Casualty Group of Insurance Companies (Ohio). In her policy plaintiff has under insured motorist (UIM) coverage with limits of $50,000, in addition to no-fault coverage.
*74 Plaintiff gave timely notice to Ohio of the aforementioned accident as to her claim for underinsured motorist coverage. Ohio admits that it provided underinsured motorist coverage to plaintiff at the time of the accident.
Longworth alleges damages in excess of the Allstate and Ohio policy limits. Ohio asserts it is not obligated to pay underinsured motorist benefits until the underlying tort action is tried to a conclusion, thereby fixing the amount of Longworth's damages. In support of its position, Ohio relies upon the language of "Endorsement 3" and "Condition 4" contained within its policy.
"Endorsement 3" provides:
The company shall not be obligated to make any payment because of bodily injury or property damage to which this insurance applies and which arises out of the ownership, maintenance or use of any underinsured highway vehicle until after the limits of liability under all bodily injury and property damage liability bonds or insurance policies respectively applicable at the time of the accident to damages because of bodily injury or because of property damage have been exhausted by payment of judgments or settlements.
The Ohio policy, "Section I. Condition 4," governs subrogation and reads as follows:
4. Reimbursement and Trust Agreement. Subject to any applicable limitations set forth in the New Jersey Automobile Reparation Reform Act, in the event of any payment to any person under this endorsement:
(a) the Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; and the Company shall have a lien to the extent of such payment notice of which may be given to the person or organization causing such bodily injury, his agent, his insurer or a court having jurisdiction in the matter;
(b) such person shall hold in trust for the benefit of the Company all rights of recovery which he shall have against such other person or organization because of such bodily injury;
(c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights;
(d) such person shall execute and deliver to the Company such instruments and papers as may be appropriate to secure the rights and obligations of such person and the Company established by this provision.
*75 The language implies that if the insured settles without the carrier's consent, the insured's entitlement to underinsurance proceeds will be forfeited. Ohio does not dispute this interpretation. Such a clause is known in the insurance industry as a "no-consent to settle" exclusion.
Plaintiff filed this declaratory judgment action seeking the proceeds of Ohio's UIM coverage. The case now has evolved and expanded to include the following issue: whether Ohio has, or should have, the right to subrogate any payments made to Longworth pursuant to the underinsured motorist coverage under her own automobile policy.
Oral argument of this motion for partial summary judgment was heard on March 21, 1986. Counsel stipulated to the form of the insurance policy providing UIM coverage. During the course of argument reference was made to legislative intent regarding subrogation as illustrated in the provisions of "The New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984," N.J.S.A. 17:28-1.1 et seq. (cost containment act)[1]. For purposes of this opinion, the parties request that this court incorporate the provisions of the "cost containment act" in its discussion of Ohio's subrogation rights.
The narrow issue presented is whether an underinsurer has a right of subrogation against an underinsured tortfeasor. For reasons expressed below it is this court's ultimate conclusion that the subrogation provision contained in Ohio's underinsurance policy is contrary to the purpose of New Jersey's automobile insurance statutes, against public policy and unenforceable.

*76 I.

Overview of Underinsurance Statutes and Decisions in Other Jurisdictions.
The question presented by this action, whether an underinsurer has a right of subrogation against an underinsured tortfeasor has not been answered by a New Jersey court. The courts in other jurisdictions that have ruled upon the effectiveness of a subrogation clause in UM/UIM provisions in automobile policies are not in agreement[2].
The split among the courts applying such subrogation clauses in the situation where the insured settles with an insured motorist can be attributed to several variables. Each state has a unique UM/UIM statute and UIM coverage is defined differently among the states; in some states UIM coverage is mandatory while in others (as in New Jersey) such coverage is optional[3]; in some decisions, the underinsured tortfeasor is one of multiple defendants; in other decisions the insured has settled with an underinsured tortfeasor without the insurer's consent or knowledge. To date, the following cases have addressed the issue with the following results: March v. Mountain States Mutual Casualty Company, 101 N.M. 689, 687 P.2d 1040 (N.M.Sup.Ct. 1984), (consent to settle clause upheld; insured settled with single underinsured tortfeasor without knowledge or consent of insurer; statute requires UIM coverage and is silent as to underinsurer's right of subrogation.); contra Niemann v. Travelers Ins. Co., 368 So.2d 1003 (La. Sup.Ct. 1979), (consent to settle clause invalidated; insured settled *77 with single underinsured tortfeasor without knowledge or consent of insurer; statute requires UIM coverage but defines underinsured as uninsured; statute is silent as to underinsurer's right of subrogation.); Wescott v. Allstate Ins. Co., 397 A. 2d 156 (Me.Sup.Ct. 1979); Rhault v. Tsagarakos, 361 F. Supp. 202 (D.Vt. 1973) (in both cases consent to settle clause invalidated; insured settled with underinsured tortfeasor in multiple defendant context without insurer's consent or knowledge; statute requires UIM coverage and is silent as to underinsurer's right of subrogation); cf. Schmidt v. Clothier, 338 N.W.2d 256 (Minn.Sup.Ct. 1983) (subrogation clause valid but limited to situation where underinsurer actually pays benefits; insured notified insurer of pending claim against single insured defendant; statute requires offer of UIM and extends limited subrogation rights to insurer.); Vogt v. Schroeder, 129 Wis.2d 3, 383 N.W.2d 876 (Wisc.Sup.Ct. 1986) (citing with approval Schmidt, supra, subrogation clause valid but limited to situation where underinsurer actually pays benefits; insured notified insurer of pending claim against single insured defendant; opinion silent as to UM/UIM statute; issue decided upon insurance policy language.).
It is clear that in resolving this issue, this court must focus on the purpose of New Jersey's automobile reparation statutes, the construction of the statutes and relevant public policy considerations. This court believes the reasoning of those courts which reject such liability limiting clauses as the "no-consent-to-settlement" exclusion is more in line with the policy and purpose of the New Jersey automobile reparation statute.
In reaching this conclusion, this court is guided both by the purposes of the reparation statute as enunciated by the Legislature and the previous decisions by New Jersey Courts which have construed legislation involving automobile insurance.

II.

Purpose of New Jersey's Automobile Reparation Statutes.
The objectives of the no-fault system are to "provide prompt compensation for medical costs without regard to fault"[4] and *78 to "streamline the judicial procedures involved in third-party claims."[5]
The purpose of uninsured motorist coverage is to protect New Jersey residents from non-insured, financially irresponsible motorists. Uninsured motorist protection furthers the socially desirable policy of adequately indemnifying innocent automobile accident victims. Fernandez v. Selected Risks Insurance Co., 82 N.J. 236, 240-241 (1980).
Underinsured motorist coverage protects against the inadequately insured motorist.[6] The "cost containment act" enhanced the right of the consumer to protect himself and his family from the negligence of drivers and owners who fail to purchase insurance or who purchase only the minimum amount of $15,000. A motorist can purchase UM and UIM coverage up to $250,000. All insurers must provide UIM as an option. The purpose of UIM coverage is to provide protection to the insured where a negligent driver has less insurance coverage available than the policyholder.[7]

III.

Construction of New Jersey's Automobile Reparation Statutes.
In Brokenbaugh v. N.J. Manufacturers Ins. Co., 158 N.J. Super. 424 (App.Div. 1978) the court construed the UM provisions *79 of the "New Jersey Automobile Reparation Reform Act," N.J.S.A. 39:6A-1 et seq. (reform act)[8]. The court noted that the reform act made UM coverage mandatory. N.J.S.A. 17:28-1.1. The Appellate Division found that "it is apparent that PIP and UM coverage were both part of one `insurance package' aimed at providing the broadest protection for all persons injured in accidents occurring in New Jersey. As such, the statutes providing such coverage are in pari materia." Brokenbaugh, supra at 434; citations omitted.
The enactment of UM/UIM "indicates a legislative public policy of protecting motorists and providing the victims with a means of obtaining compensation for the damages they incur in an accident involving an insufficiently insured driver."[9] Such remedial legislation should be liberally construed to effect "the broadest protection of auto accident victims consistent with the language of the pertinent statute." Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 293 (1974); Government Employees Ins. Co. v. Shara, 137 N.J. Super 142, 147 (Ch.Div. 1975); Cieka v. Transamerica Ins. Group, 81 N.J. 421, 428 (1979).
In order to carry out the primary purpose of such legislation, conditions and exceptions of the insurance contract, inserted therein in an attempt to limit or restrict the coverage prescribed by the statute, are strictly construed against the insurer and liberally in favor of the insured. Fellippello v. Allstate Ins. Co., 172 N.J. Super. 249, 261-262 (App.Div. 1979); Wescott v. Allstate Ins. Co., 397 A.2d 156 (Me.Sup.Ct. 1979).
With this overview as background and guided by the principles set forth above, this court next turns to their application to *80 the instant case. We now undertake an analysis of Ohio's policy and its effects.

IV.

ANALYSIS.

A. Effect of Ohio's "No-Consent to Settle" Exclusion is Contrary to the Purpose of the Automobile Reparation Statute.
A strict interpretation of Ohio's policy provisions requires that in order for a plaintiff to recover against an underinsurer, the tort case against the underinsured tortfeasor must be tried to a conclusion. Ohio submits that this result is required by the plain language of the contract.
Ohio contends the conditions precedent to coverage as set out in the underinsured motorist "Endorsement 3" have not been fulfilled. Allstate's policy limits have not been "exhausted by settlement and/or judgment." Therefore, Ohio asserts that it is not obligated to make any payment to Longworth by reason of the above endorsement.
Longworth argues that the language contained in Ohio's "Reimbursement and Trust Agreement" precludes settlement of the underlying policy limits with the underinsured tortfeasor. Since Longworth cannot prejudice Ohio's rights to recovery, Longworth cannot extend a general release.
In this case, Longworth attempted to settle with Allstate and its insured, Van Houten. However, Allstate would not release the policy limits absent a general release. Allstate had a contractual duty to defend Van Houten. Allstate is bound to protect the interests of its insured and, therefore, cannot execute a partial release as required by Longworth under Ohio's policy. Longworth could not extend a general release without risk of forfeiture of Ohio's UIM benefits pursuant to the terms of the subrogation clause. The practical effect of the subrogation clause is to preclude the underlying liability limits from being exhausted by payment of settlement.
*81 The underlying limits can only be exhausted through payment of a judgment by Allstate. Longworth is forced to litigate the claim to final judgment in order to exhaust the policy limits. The result is contrary to the purposes of both the "reform act" and "cost containment act."
The subrogation clause in question delays compensation rather than promoting prompt compensation, increases litigation rather than decreasing litigation, chills settlement and compromise rather than encouraging out of court resolution of claims and seeks to give control of the litigation to Ohio where such authority is not conferred by statute. Such effects were disapproved in Government Employees Insurance Co. v. Shara, 137 N.J.Super 142 (Ch.Div. 1975) (hereinafter Geico).
In Geico the court construed a subrogation clause containing a "no-consent-to settlement" provision in the uninsured motorist context. Judge Kentz found the clause to be contrary to the purpose of the UM statute, against public policy and unenforceable.
Defendant Shara in Geico was injured when the motor vehicle she was operating became involved in an accident with another vehicle owned and operated by defendant Melle. The Melle vehicle had been cut off by a car owned and operated by defendant Sossa. Sossa was uninsured. Melle was insured by Kemper Insurance Co. (Kemper).
Shara settled her claim against Melle and collected from Kemper. Shara extended a general release to Kemper and its insured, Melle. The settlement was without the knowledge or consent of Shara's carrier, Geico. Shara made a claim under the UM endorsement of the Geico policy. She demanded arbitration pursuant to the UM provisions. Geico contended Shara was not entitled to arbitration for failure to comply with the subrogation clause containing the "no-consent-to settle" provision.
The court noted that "courts that have ruled upon the effectiveness of this `written consent' exclusion in the UM provision *82 are not in agreement." Geico, supra at 146. Judge Kentz then adopted the approach which views the "written consent" exclusion as an "unauthorized and unwarranted curtailment of statutorily mandated insurance coverage." Id. at 147. Such approach is consonant with that taken by the New Jersey Supreme Court in Motor Club of America Ins. Co. v. Phillips, supra, 66 N.J. at 294. The Supreme Court held "invalid the standard excess-escape paragraph of the `other insurance' provisions in the UM provisions of the insurance policy in question. This exclusion was held to be `repugnant to the statute and is, as applied to the facts here presented, invalid and ineffective'." Ibid.; Geico, supra 137 N.J. Super. at 148.
The court analyzed the effect of Geico's written "no-consent-to settle" clause:
The exclusionary clause in Geico's policy which requires the insurers consent to any settlement with others who "may be liable" with the uninsured motorist attempts to give the insurance company complete control of the insured's right of action against all those involved in an accident, whether they be insured or uninsured. Such authority is not conferred by statute. The sanctioning of such a policy provision would frustrate the intent of the uninsured motorist statute in a situation such as the one at hand. [Geico, supra at 148]
The court noted that: "We are concerned here only with a settlement agreement with an insured motorist." Id. at 148, n.
8. The court then concluded:
Insofar as the provision restricts the insured's right to compromise and settle his claim against an insured motorist who might be liable to him, it is contrary to the purpose of the statute. To permit a settlement with an insured third-party to work a forfeiture of legislatively prescribed insurance coverage merely because the insured failed to secure the written consent of his insurer would nullify the reason for the statute, i.e., financial responsibility to the extent of the coverage for such damage as the insured may be legally entitled to recover from the uninsured motorist. [Id. at 149]
This court is cognizant that the instant case involves under insurance coverage and such coverage is optional under the "cost containment act." Further, this court takes notice that there is a single insured defendant in this case. However, the policy considerations set forth above remain pertinent to the situation presented herein.
*83 Pursuant to N.J.S.A. 39:6A-3, every owner or registered owner of an automobile registered or principally garaged in this State must maintain automobile liability coverage. This coverage is compulsory and is designed to provide the innocent third-party victim a fund from which to recover for the injuries sustained.[10] Defendant Van Houten complied with the statute and is insured by Allstate for the statutory minimum of $15,000/$30,000.
Apparently, Allstate has recognized that plaintiff's injuries are serious. Allstate has deposited its policy limits into court. As discussed supra, Allstate was unable to obtain a general release due to the exclusion clause in issue. Thus, the clause serves to block plaintiff from obtaining recovery from a statutorily mandated policy.
Further, although underinsured motorist coverage is optional, the cost containment act mandates that insurance companies offer the coverage. N.J.S.A. 17:28-1.1. UIM coverage is a part of a comprehensive automobile reparation plan. Why then should a provision contained in such a policy frustrate the purpose of a comprehensive reparation package?
The exclusion clause also has the effect of restricting the insured's right to compromise and settle his claim with an insured tortfeasor. In Niemann v. Travelers Ins. Co., 368 So. 2d 1003 (La.Sup.Ct. 1979) the Louisiana Supreme Court invalidated a similar clause on statutory grounds, however, the court recognized a significant public policy consideration. The court cited from a previous Louisiana Supreme Court decision in Hebert v. Green, 311 So.2d 223 (La.Sup.Ct. 1975):
... A well recognized principle of our law is that compromises are to be favored. If the client's interests are to be most favorably promoted through the device of settlement and compromise, the attorney involved cannot afford to operate at the whim, or subject to the direction and consent, of an insurance company's claims representative ... [Moreau v. State Farm Mut. Auto. Ins.] 298 So.2d [907] at 913 [La.Sup. 1974]. [Neimann, supra at 1007, n. 7]
*84 The clause blocks plaintiff from recovering from two insurance policies or two sources of reparation. The subrogation provision allows Ohio to control plaintiff's case without imposing an obligation on Ohio to take any affirmative steps to resolve the situation the Ohio policy has created.
Unlike the situation in Geico, Ohio has received notice of Van Houten's claim and proposed settlement but has done nothing to effect a resolution of the situation except to request arbitration. (This will be discussed, infra. Ohio's arbitration provision is not binding on Ohio.). Ohio merely submits that no obligation on its part is triggered until Van Houten's damage claim is determined after a jury trial. Rather than decreasing the burden of litigation in the courts, this exclusion clause will effectively increase the burden of litigation. This effect is clearly contrary to the purpose of the statute. The "Reimbursement and Trust Agreement," therefore, is invalid, against public policy and unenforceable.

B. Ohio's Right to Subrogation is Subject to Statutory Limitations.
Ohio contends that UIM coverage is not mandated by the "reform act" or the "cost containment act." Ohio asserts that since the coverage is optional, insured and insurer are free to contract with one another subject only to the plain meaning of the policy language. This court disagrees. Insurance policies are contracts of adhesion, prepared unilaterally by the insurer. The insured is not free to negotiate their terms. Sparks v. St. Paul Ins. Co., 100 N.J. 325, 335 (1985).
Further, in New Jersey, an insurer's right of subrogation is controlled by statute. N.J.S.A. 39:6A-9.1. The reparation statutes are to be read in pari materia. See Brokenbaugh, supra, 158 N.J. Super. at 434. Therefore, the provisions of N.J.S.A. 17:28-1.1 mandating uninsured motorist coverage and mandating the offer of underinsured motorist coverage are to *85 be read in conjunction with the subrogation section of N.J.S.A. 39:6A-9.1.
In construing the predecessor subrogation section, N.J.S.A. 39:6A-9, the New Jersey Supreme Court in Cirelli v. The Ohio Casualty Insurance Co., 72 N.J. 380 (1977) noted that "[this] section provides that it shall be inoperative after December 31, 1974. This has been held to mean that subrogation rights have been extinguished with respect to accidents occurring after that date." Id. at 385; citations omitted.
A reasonable interpretation of the present § 9.1 is that where the Legislature has deemed to extend such right of subrogation it has done so expressly. Section 9.1 provides:
Recovery of personal injury protection benefits from tortfeasor
An insurer paying personal injury protection benefits in accordance with section 4 or section 10 of P.L. 1972, c. 70 (C.39:6A-4 or C.39:6A-10) as a result of an accident occurring within this State shall, within two years of filing of the claim, have the right to recover the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection coverage, other than for pedestrians. In the case of an accident occurring in this State involving an insured tortfeasor, the determination as to whether an insurer is legally entitled to recover the amount of payments and the amount of recovery, including the costs of processing benefit claims and enforcing rights granted under this section, shall be made against the insurer of the tortfeasor, and shall be by agreement of the involved insurers or, upon failing to agree, by arbitration. [Emphasis supplied]
Ohio characterizes Van Houten as an uninsured third-party tortfeasor. Ohio argues that § 9.1 reversed the Supreme Court holding in Aetna Ins. Co. v. Gilchrist Brothers, Inc., 85 N.J. 550 (1981) and recognizes the right of insurers to subrogate in uninsured motorist cases.
An uninsured motor vehicle is defined by N.J.S.A. 17:28-1.1e(2)(a) as "a motor vehicle with respect to ownership, operation, maintenance, or use of which there is no bodily injury liability insurance or bond applicable at the time of the accident." Section (2)(c) states: "`Uninsured motor vehicle' shall not include an underinsured motor vehicle...." Thus an underinsured motor vehicle is not uninsured. See Gorton v. Reliance Insurance Co., 77 N.J. 563, 572 (1978) (subject vehicle *86 had liability insurance in the minimum required limits, therefore, by definition is not uninsured.). Van Houten is by definition insured.
Ohio supplies no authority or relevant legislative history in support of its contention that the Legislature intended to overrule Aetna, supra, when it enacted § 9.1 within the "cost containment act."[11] The pertinent language of § 9.1 allows an insurer to recover "the amount of payments from any tortfeasor who was not, at the time of the accident, required to maintain personal injury protection coverage, other than for pedestrians." A close reading of Aetna, supra, would support an interpretation that this language refers to commercial insureds.
In Aetna, plaintiff was struck from behind by a tractor trailer. Such commercial vehicle was not required by the no-fault act to provide PIP benefits. The dissent in Aetna pointed out that the insurers of private PIP covered automobiles could not recover payments from commercial insurers for PIP expenses paid to their private insureds. However, commercial insurers have no restriction on their right to sue private automobile operators and their insurers for PIP type expenses paid to their commercial insureds only.
The right of an insurer to recover the amount of payments from an uninsured tortfeasor was not expressly extended until L. 1985, c. 520, § 17 was enacted on January 21, 1986.[12] This act is not before the court. However, assuming arguendo Ohio has a right of subrogation against an uninsured *87 tortfeasor, Ohio still does not have a statutory right of subrogation against Van Houten. Van Houten is insured. Therefore, under the plain language of § 9.1, Ohio's remedy is against "the insurer of the tortfeasor" and the amount of recovery is to be determined "by agreement of the involved insurers or, upon failing to agree, by arbitration."
If Ohio is to have a right of subrogation against an under insured tortfeasor, such right will have to be extended by the express mandate of the Legislature. Under the expressio unius doctrine, it is generally held that where the Legislature makes express mention of one thing, the exclusion of the other is implied. Shapiro v. Essex County Board of Chosen Freeholders, 177 N.J.Super 87 (Law Div. 1980), aff'd 183 N.J.Super 24 (App.Div. 1982), aff'd 91 N.J. 430 (1982). This court is satisfied that the history of the automobile reparation statutes indicates that where the Legislature intends that a right of subrogation should exist, it expressly and affirmatively extends the right to subrogate. No such right has been extended in the underinsured context.

C. The Commissioner of Insurance has no Power or Authority to Approve Forms of Automobile Policy or Endorsements which Violate Statutory Intent.
Ohio submits that the policy the court is construing is not only the policy of Ohio, but generally of the insurance industry. Such form was submitted on behalf of the insurance industry to the commissioner of insurance through the insurance services office. Ohio points to N.J.S.A. 17:28-1.1(d) as the source of the commissioner's authority to approve the policy:
d. Underinsured motorist coverage shall be subject to the policy terms, conditions and exclusions approved by the Commissioner of Insurance, including but not limited to unauthorized settlements, nonduplication of coverage, subrogation and arbitration.
Such authority is not absolute. In Fellippello v. Allstate Ins. Co., 172 N.J.Super 249 (App.Div. 1979) the court stated:

*88 It is now clear that the Commissioner has no power or authority to approve forms of policies or endorsements which violate the statutory intent, Motor Club of America Ins. Co. v. Phillips, 66 N.J. 277, 286 (1974); Hoglin v. Nationwide Mut. Ins. Co., 144 N.J.Super, 475, 482 (App.Div. 1976), and where policy provisions conflict with coverage required by statute, they are inapplicable and deemed amended to conform to statutory standards. Hoglin v. Nationwide Mut. Ins. Co., supra; Selected Risks Ins. Co. v. Zullo, 48 N.J. 362, 373 (1966) [Id. at 261]
For the reasons set forth in section III of this opinion, supra, this court finds that the policy provision in question is contrary to the purpose of the reparation statute, and is therefore invalid.

D. The Trial is not Stayed Pending Arbitration of the Underinsurance Claim.
The Ohio policy provides for arbitration in the uninsured and underinsured motorist protection endorsement:
ARBITRATION
If we and a covered person do not agree:
1. Whether that person is legally entitled to recover damages under this Part; or
2. As to the amount of damages;
either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:
1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.
Unless both parties agree otherwise, arbitration will take place in the county in which the covered person lives. Local rules of the law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:
1. Whether the covered person is legally entitled to recover damages; and
2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount *89 of damages agreed to by the arbitrators will be binding. [Emphasis supplied]
By invoking this provision it is apparent that Ohio is attempting to delay rather than avert a trial and effect a settlement. Ohio's stated position is that Ohio has no obligation to pay underinsurance benefits until Longworth's damages are fixed after a jury trial. Ohio is aware that Allstate has deposited the policy proceeds into court. In the event the arbitration award is above these limits, Ohio is not bound. Ohio can demand the right to trial. It is apparent that Ohio will pursue this right to trial from the position Ohio asserts in its legal arguments before this court. Therefore, this court will not stay the trial of the underlying tort action pending the arbitration proceeding.

V.

CONCLUSIONS.
For the reasons set forth above, this court holds that the subrogation provision containing a "no-consent-to settle clause" is against the purposes of the automobile reparation statute in this State. Such clause is therefore invalidated and unenforceable.
A situation similar to the one presented herein can be avoided in the future if the Legislature provides for a procedure to resolve underinsurance claims. See Schmidt v. Clothier, 338 N.W.2d 256, 263 (Minn.Sup.Ct. 1983).
The settlement by plaintiff and Allstate Insurance Company shall be enforced and the matter of Longworth v. Van Houten is dismissed with prejudice and without cost based on the settlement. Judgment is entered in favor of Zenta Longworth in the matter of Longworth v. Ohio Casualty, docket No. 83302-84 with cost.
NOTES
[1] L. 1983, c. 362, § 1 et seq., effective January 1, 1984.

Note: The date of the accident, June 7, 1983, was prior to the effective date of this act. However, under insurance coverage has recently become the subject of extensive judicial involvement in this State. The parties therefore seek adjudication of the statutory subrogation rights of underinsurers under this act.
[2] See Annotation, "Right to Recover Under Uninsured and Underinsured Motorist Insurance for Injuries Attributable to Joint Tort Persons, One of Whom is Insured," 24 A.L.R. 4th 63 (1983); Annotation, "Validity, Construction and Effect of `No-Consent-to Settlement' Exclusion Clauses in Automobile Insurance Policies," 18 A.L.R. 4th 250 (1982).
[3] No Fault and Uninsured Motorist Automobile Insurance (Matthew Bender 1985) at 30-16 et seq.
[4] Purola, "Automobile Insurance in New Jersey; the Issues," a staff report (Feb. 8, 1977) at 13.
[5] Report of Ad Hoc Committee to Study Insurance Reform of the Assembly Banking and Insurance Committee (January 3, 1979) at 15.
[6] Hentemann, "Underinsured Motorist Coverage: A New Coverage With New Problems," Insurance Counsel Journal (July 1983) at 365-366.
[7] Baker, "UMC and UIM: New Era of Consumer Protection," New Jersey Lawyer (Spring 1985) at 23.
[8] L. 1972, c. 70. The "reform act" is the predecessor statute to the cost containment act. The cost containment act is built upon the foundations of the reform act and enhances coverage afforded to motorists.
[9] No Fault and Uninsured Motorist Automobile Insurance (Matthew Bender 1985) at 30-14.
[10] See footnote 7, supra.
[11] A legislative history checklist supplied by the state library indicates there are no committee statements available pertaining to the "cost containment act."
[12] See Statement of Senate Labor, Industry and Professions Committee. "Section 17 reflects the amendments contained in this bill by permitting an insurer paying personal injury protection benefits or medical expense benefits to recover such payment from a tortfeasor who failed to maintain the required ... coverage at that time of the accident."