208 N.J. Super. 308 (1985)
505 A.2d 243
JOHN COKENAKES AND MARY COKENAKES, PLAINTIFFS,
v.
OHIO CASUALTY INSURANCE CO., LIBERTY MUTUAL INSURANCE CO., AND HARTFORD INSURANCE CO., DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided September 19, 1985.
*309 John Montis for plaintiffs.
Drew J. Przybylowski for defendant Ohio Casualty Ins. Co. (Parker, McCay & Criscuolo, attorneys).
Linton Turner, for defendant Liberty Mutual Ins. Co. (Martin, Crawshaw & Mayfield, attorneys).

OPINION
HAINES, A.J.S.C.
This is an action for personal injury protection (PIP) benefits. The Cokenakes were involved in an automobile accident in Hollywood, Florida, on January 23, 1983. They were operating a leased vehicle insured by Liberty Mutual Insurance Company ("Liberty"). They owned an automobile, not involved in the accident, which was insured by the Ohio Casualty Insurance Company ("Ohio"). Both companies have been sued for PIP benefits together with the Hartford Insurance Company, which provided coverage for the second vehicle involved in the accident. The Hartford claim is not relevant here.
Liberty Mutual moves for summary judgment requiring Ohio, as the primary carrier, to pay PIP benefits to the plaintiffs. Ohio defends the motion, arguing that it is not primarily liable but is a co-insurer entitled to contribution from Liberty. There are no factual disputes and summary judgment is appropriate. Resolution of the dispute depends upon the interpretation of N.J.S.A. 39:6A-4.2, which became effective on October 4, 1983, and operative on January 1, 1984; if it is to be applied retrospectively, Liberty wins; if it is not, Ohio wins. The issue has not previously been decided.
N.J.S.A. 39:6A-4.2 is entitled "Primacy of Coverages" and provides:
The personal injury coverage of the named insured shall be the primary coverage for the named insured and any resident relative in the named insured's household who is not a named insured under an automobile insurance policy of his own. No person shall recover personal injury protection benefits *310 under more than one automobile insurance policy for injuries sustained in any one accident.
Ohio is the carrier providing "coverage of the named insured," which is therefore "the primary coverage" for the Cokenakes. The insurer providing primary coverage is first liable for the payment of benefits. Annotation, "Excess Carrier's Right to Maintain Action Against Primary Liability Insurer for Wrongful Failure to Settle Claims Against Insured," 10 A.L.R. 4, 879-880 (1981). In the present case, therefore, Ohio must pay unless the accident, which occurred prior to the effective and operative dates of the statute, is not affected by the new legislation. Former law made no distinction between primary insurers and others.
The prior rule was established in Federal Insurance Co. v. Liberty Mutual Ins. Co., 190 N.J. Super. 605 (App.Div. 1983), which held, relying upon N.J.S.A. 39:6A-11, that "[t]he statute ignores all differences in categories of insurers and claimants," at 614, and that when one of two insurers, such as Liberty or Ohio in the present case, pays PIP benefits, the other is entitled to contribution. See also Selected Risks Ins. Co. v. Allstate Ins. Co., 179 N.J. Super. 444, 449 (App.Div. 1981), certif. den., 88 N.J. 489 (1981). N.J.S.A. 39:6A-11 provides in full as follows:
Contribution among insurers.
If two or more insurers are liable to pay benefits under sections 4 and 10 of this act for the same bodily injury, or death, of any one person, the maximum amount payable shall be as specified in sections 4 and 10 if additional first party coverage applies and any insurer paying the benefits shall be entitled to recover from each of the other insurers, only by inter-company arbitration or inter-company agreement, an equitable pro-rata share of the benefits paid.
Federal, said with respect to this section of the statute:
Section 11 ... merely provides that any insurer will be entitled to contribution from another insurer by inter-company agreement or arbitration, whenever "two or more insurers are liable to pay benefits" for the same injury to any one person. The statute ignores all differences in categories of insurers and claimants. [Emphasis supplied; at 614.]
Section 11 remained unchanged when the Legislature adopted Section 4.2.
*311 Is Section 4.2 to be construed retrospectively or prospectively? The general rule is that statutes will be applied prospectively. In Gibbons v. Gibbons, 86 N.J. 515 (1981), the Supreme Court discussed this rule and its exceptions. It said:
Thus, there are well settled rules concerning the circumstances in which statutes should be applied retroactively, where there is no clear expression of intent by the Legislature that the statute is to be prospectively applied only.
First, there are those statutes in which the Legislature has expressed the contrary intent; i.e., that the statute be applied retroactively. In such cases, the court should, as Justice Schreiber has said, "apply the statute in effect at the time of its decision."
........
Another category of cases in which we have held that statutes may be given retroactive application is that in which the statute is ameliorative or curative....
Finally, in the absence of a clear expression of legislative intent that the statute is to be applied prospectively, such considerations as the expectation of the parties may warrant retroactive application of the statute....
However, even if the statute may be subject to retroactive application, a final inquiry must be made. That is, will retroactive application result in "manifest injustice" to a party adversely affected by such an application of the statute? The essence of this inquiry is whether the affected party relied, to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and whether the consequences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively. [At 521-25.]
In Kopczynski v. Cty. of Camden, 2 N.J. 419, 424 (1949), the court said: "A cardinal rule in the interpretation of statutes is that words in a statute ought not to have a retrospective operation unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the Legislature cannot otherwise be satisfied." This rule was acknowledged in Rothman v. Rothman, 65 N.J. 219, 224-25 (1974), but the court said:
We continue to believe that these statements express a sound rule of statutory interpretation. But it is no more than a rule of statutory interpretation, and all such rules have a single purpose  to aid the court in its quest for legislative intent. Where, as we find here to be the case, supervening considerations clearly compel a contrary determination, this, like all other rules of statutory construction must give way.
*312 Procedural changes effected by statutes may be given retrospective application unless the result would disturb vested rights. Thus, in Pennsylvania Greyhound Lines Inc. v. Rosenthal, 14 N.J. 372 (1954), the court said:
The general rule is that statutes are to be deemed operative in futuro only; but absent a clear indication of a legislative intent contra, a remedial and procedural statute is ordinarily applicable "to procedural steps in pending actions," and is given retrospective effect "insofar as the statute provides a change in the form of remedy or provides a new remedy for an existing wrong...." Shielcrawt v. Moffett, 294 N.Y. 180, 61 N.E.2d 435, 159 A.L.R. 971 (Ct.App. 1945) [At 381].
The court gave retrospective effect to the "Joint Tort Feasors Contribution Law," finding it to be a remedial measure. The purpose of that law parallels that of Section 4.2 of the No-Fault Law. See also Neel v. Ball, 6 N.J. 546, 551 (1951). Pennsylvania Greyhound was cited in State Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473 (1983), in which the court said: "A statute that gives retrospective effect to essentially remedial changes does not unconstitutionally interfere with vested rights." Id. At 499. The same case noted the underlying obligation of the court: "In considering whether a statute should be applied prospectively or retroactively, our quest is to ascertain the intention of the Legislature." Id. at 498.
There is no helpful Legislative history with respect to Section 4.2. The fact that its effective date was postponed to October 4, 1983, and its operative date to January 1, 1984, may be construed as an intention to have the statute apply only prospectively. Thus, 2 Sutherland Statutory Construction 11, 12 (4th ed. 1973) states: "A statute with a definite future day fixed for its commencement has effect only from that time...." It further states: "The purpose of the future effective date is to inform persons of the provisions of the statute before it becomes effective in order that they may take steps to protect their rights and discharge their obligations." This, however, is the only indicator of Legislative intent that points to the future. All other indications are to the contrary.
*313 The present case illustrates the problem that occurs when there is no primary insurer. Persons injured in automobile accidents, clearly entitled to PIP benefits, are not paid by reason of disputes between co-equal insurers. It is reasonable to believe that the Legislature intended to correct this circumstance when it adopted Section 4.2. It is remedial legislation. Sutherland Section 41.09, says that a remedial statute can be one which cures defects in previous statutes or supplies omissions. Further: "remedial legislation is valid provided vested rights are not disturbed nor obligations of contract impaired." Id. Morin v. Becker, 6 N.J. 457 (1951), discusses the question of vested rights as follows, quoting from Wanser v. Atkinson, 43 N.J.L. 571, 574-575 (Sup.Ct. 1881):
The right to a particular remedy is not a vested right. This is the general rule; and the exceptions are those peculiar cases in which the remedy is part of the right itself. As a general rule, every state has complete control over the remedies which it offers to suitors in its courts. It may abolish one class of courts and create another. It may give a new and additional remedy for a right already in existence. And it may abolish all remedies and substitute new. [At 470-71.]
Applying these principles and the Gibbons analysis, I hold that Section 4.2 is to be applied retroactively. The Legislature did not express any intent that this section should be applied prospectively and the fact that the effective date was postponed is not a convincing reason for reaching that conclusion. Section 4.2 is curative. It cured a defect in the prior law thereby improving the statutory scheme. Prior law required insurance carriers to share payment of benefits. Section 11 required arbitration or agreement with respect to sharing benefits before and after the passage of Section 4.2. Thus, Ohio has the same Section 11 rights with or without the new legislation. It has no vested rights with which retroactive application interferes, nor does that application treat Ohio unjustly. Ohio can show no prejudicial reliance on the old law.
In the final analysis, Section 4.2 merely designates the carrier first required to pay PIP benefits, preserving its right of contribution from other insurers also liable for such payments. *314 The Legislature thus provided a remedy for persons injured in automobile accidents when multiple insurers are unable to agree as to the PIP contributions to be made by each. Section 4.2 promotes a primary intent of the No-Fault Law: the prompt payment of PIP benefits. Victims of automobile accidents no longer need wait for multiple insurers to resolve their differences before these important benefits become payable.
To the extent that the insurance policies involved in the present suit may be read to disagree with the conclusions here reached, they are deemed amended to conform. Olivero by Olivero v. N.J. Manufac. Ins. Co., 199 N.J. Super. 191, 201 (App.Div. 1985).