264 N.J. Super. 379 (1993)
624 A.2d 1014
UNITED STATES FIDELITY & GUARANTY CO., PLAINTIFF-RESPONDENT,
v.
INDUSTRIAL INDEMNITY COMPANY AND CRUM & FORSTER COMMERCIAL INSURANCE COMPANY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 8, 1993.
Decided May 12, 1993.
Before Judges PETRELLA, LONG and D'ANNUNZIO.
*380 Paul Seligman, attorney for appellants (Carl A. Perrone, on the brief).
O'Donnell, Kennedy, Vespole, Piechta & Trifiolis, attorneys for respondent (Frances J. Panzini-Romeo, on the brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
On August 25, 1985, Sandra Hartley (Hartley) was involved in an automobile accident. At the time of the accident, she was operating a vehicle owned by her employer, Apple Computer, Inc., and insured by Industrial Indemnity Company and Crum and Forster Commercial Insurance Company (hereinafter jointly referred to as Indemnity), defendants in the present action. On or about November 12, 1985, Hartley filed a complaint seeking personal injury protection (PIP) benefits from Indemnity as well as from United States Fidelity & Guaranty Co. (hereinafter USF & G), plaintiff in the present action, the insurer of the vehicle owned by her father.
By order dated May 22, 1987, the court, having found that Hartley resided in her father's household, granted judgment to Hartley against USF & G and Indemnity, finding both companies liable for payment of PIP benefits in connection with Hartley's automobile accident. The court further ordered that the PIP benefits were to be paid primarily by USF & G. The order also required USF & G to pay interest and attorney's fees. The court denied without prejudice Indemnity's motion to hold USF & G solely liable to Hartley for PIP benefits, leaving the insurers to whatever actions they may have against each other in law or in equity for contribution.
USF & G and Hartley reached a settlement whereby USF & G agreed to pay Hartley's medical bills of $34,027.50 and attorney's fees of $19,081.25, while reserving its right to appeal the judgment. We affirmed in an unpublished opinion. Hartley v. United States Fidelity & Guaranty Co., No. A-3666-87 (App.Div. Sept. 27, 1989). The Supreme Court denied USF & G's petition for *381 certification. Hartley v. United States Fidelity & Guaranty Co., 122 N.J. 172, 584 A.2d 236 (1990).
While awaiting the outcome of its petition for certification, USF & G, seeking contribution from Indemnity, filed a demand for arbitration with the American Arbitration Association, which Indemnity resisted. Thereafter, on April 23, 1991, USF & G filed a complaint in the Superior Court, Law Division, seeking to compel Indemnity to participate in the arbitration process pursuant to N.J.S.A. 39:6A-11 (hereinafter § 11) which provides:
If two or more insurers are liable to pay benefits under sections 4 and 10 of this act[1] for the same bodily injury, or death, of any one person, the maximum amount payable shall be as specified in sections 4 and 10 if additional first party coverage applies[2] and any insurer paying the benefits shall be entitled to recover from each of the other insurers, only by inter-company arbitration or inter-company agreement, an equitable pro-rata share of the benefits paid. (Footnotes added.)
Indemnity contended that USF & G's coverage was "primary" under N.J.S.A. 39:6A-4.2 (hereinafter § 4.2), and, therefore, Indemnity had no responsibility to pay to USF & G a pro rata share of the PIP benefits under § 11. Section 4.2 provides:
Except as provided in subsection d. of section 13 of P.L. 1983, c. 362 (C. 39:6A-4.3), the personal injury protection coverage of the named insured shall be the primary coverage for the named insured and any resident relative in the named insured's household who is not a named insured under an automobile insurance policy of his own. No person shall recover personal injury protection benefits under more than one automobile insurance policy for injuries sustained in any one accident.
Indemnity and USF & G moved for summary judgment. The motion judge heard oral argument on the matter on April 3, 1992 and announced that he was denying USF & G's motion to compel arbitration. However, prior to the execution of an order, the *382 judge requested reargument of the motion. On May 1, 1992, the parties again appeared before the motion judge, at which time he reconsidered his prior decision and ruled in favor of USF & G. An order was entered compelling Indemnity to submit to arbitration for a determination under N.J.S.A. 39:6A-11 of its obligation to pay USF & G a pro rata share of the PIP benefits paid to Hartley. Indemnity filed a notice of appeal with this court, and we granted Indemnity's motion for a stay of arbitration pending appeal.
At the outset we note that N.J. Mfrs. Ins. Co. v. Travelers Ins. Co., 198 N.J. Super. 9, 486 A.2d 339 (App.Div. 1984), relied on by the motion judge, determined that the Travelers could not appeal an arbitrators' award because the arbitration agreement expressly precluded appeals. However, in dictum, we referred with approval to Federal Ins. Co. v. Liberty Mutual Ins. Co., 190 N.J. Super. 605, 464 A.2d 1197 (App.Div. 1983) and Selected Risks Ins. Co. v. Allstate Ins. Co., 179 N.J. Super. 444, 432 A.2d 544 (App.Div.), certif. denied, 88 N.J. 489, 443 A.2d 705 (1981). In those decisions, we held that § 11 means what it says, that there is contribution between two or more insurers liable to pay PIP benefits. The amount of contribution is to be determined through arbitration based on the standard of "an equitable pro rata share of the benefits paid."
Thus, in the absence of § 4.2, USF & G was entitled to the judgment compelling arbitration of its claim for contribution and we would affirm. Section 4.2 was enacted in October 1983, after Federal Ins. Co. and Selected Risks Ins. Co. were decided. Under § 4.2, USF & G's PIP coverage was "primary." At issue is the meaning of "primary" as used in § 4.2.
Indemnity contends that USF & G has no right of contribution from Indemnity because "primary" means that USF & G pays all the PIP medical benefits up to the $75,000 "limit" established in the current version of N.J.S.A. 39:6A-4a. At best, Indemnity contends, it is obligated to provide excess coverage after USF & G's limits have been exhausted. USF & G contends that the *383 carrier identified as "primary" in § 4.2 must pay the insured's PIP benefits initially and may seek contribution under § 11 from other available PIP coverage. We agree with USF & G's contention, and we now affirm.
When it enacted § 4.2, the Legislature did not eliminate or modify § 11. Indemnity's interpretation of § 4.2 would render § 11 virtually meaningless, for § 11 would apply only if two or more carriers were "primary" under § 4.2, an unlikely, though not impossible, event.[3] Moreover, N.J.A.C. 11:3-37.12(c) permits contribution. It provides:
(c) If an automobile policy PIP plan provides benefits for medical expenses for an insured who is eligible for medical expense benefits under more than one automobile policy PIP plan, the automobile insurer of the paying PIP plan may seek equitable pro rata contributions from the other automobile policy PIP plan(s) for the benefits actually paid by the paying PIP plan.
This regulation supports USF & G's position because it reflects the Department of Insurance's understanding of the impact of § 4.2 and its relationships with § 11.[4] An agency's understanding of a statute it is charged to enforce is of assistance in interpreting that statute. See Cedar Cove, Inc. v. Stanzione, 122 N.J. 202, 212, 584 A.2d 784 (1991). "The meaning ascribed to legislation by the administrative agency responsible for its implementation, including the agency's contemporaneous construction, long usage, and practical interpretation, is persuasive evidence of the Legislature's understanding of its enactment." Ibid.
*384 The major flaw, however, in Indemnity's primary/excess construct is that a limit on the payment obligation of the primary carrier is the predicate of excess coverage. In 1983, when § 4.2 was adopted there was no limit on the PIP carrier's obligation to pay, there was only a right of reimbursement from the Unsatisfied Claim and Judgment Fund. In 1983, N.J.S.A. 39:6A-4a provided:
a. Medical expense benefits. Payment of all reasonable medical expenses incurred as a result of personal injury sustained in an automobile accident. In the event of death, payment shall be made to the estate of the decedent. In the event benefits paid by an insurer pursuant to this subsection are in excess of $75,000.00 on account of personal injury to any one person in any one accident, such excess shall be paid by the insurer in consultation with the Unsatisfied Claim and Judgment Fund Board and shall be reimbursable to the insurer from the Unsatisfied Claim and Judgment Fund pursuant to section 2 of P.L. 1977, c. 310 (c. 39:6-73.1).[5] (Footnote added.)
Under this scheme it is unlikely that the Legislature intended to use the word "primary" in § 4.2 to indicate a primary/excess relationship between two insurers liable to pay PIP benefits, because at the time § 4.2 was enacted the primary carriers' "limits" were never exhausted.[6]
We are persuaded that the purpose of § 4.2 was to identify a source for the immediate payment of PIP benefits, thereby insulating covered persons from delays caused by squabbles between insurers. We agree with Judge Haines' construction of § 4.2 expressed in Cokenakes v. Ohio Casualty Ins. Co., 208 N.J. Super. 308, 313-14, 505 A.2d 243 (Law Div. 1985):

*385 In the final analysis, Section 4.2 merely designates the carrier first required to pay PIP benefits, preserving its right of contribution from other insurers also liable for such payments. The Legislature thus provided a remedy for persons injured in automobile accidents when multiple insurers are unable to agree as to the PIP contributions to be made by each. Section 4.2 promotes a primary intent of the No-Fault Law: the prompt payment of PIP benefits. Victims of automobile accidents no longer need wait for multiple insurers to resolve their differences before these important benefits become payable.
Indemnity's contention that USF & G's demand for arbitration is precluded by the principles of collateral estoppel and res judicata is without merit. The contribution issue was reserved by the trial judge in his judgment in the Hartley litigation.
Affirmed.
NOTES
[1] The Act is the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35, popularly known as the no-fault law. Sections 4 and 10 refer to N.J.S.A. 39:6A-4 and -10 which provide for basic personal injury protection (PIP) benefits and optional additional PIP benefits.
[2] This clause, "if additional first party coverage applies" refers to the insured's election of additional PIP coverage under N.J.S.A. 39:6A-10. In that event, § 11 provides that the maximum amount payable shall be governed by section 10. Contrary to Indemnity's contention, the clause is not relevant to the issue in this case.
[3] In a household of related individuals, e.g., three siblings, with multiple automobiles in different ownership and with different carriers there may be multiple "primary" carriers if one of the household members does not own an automobile and is not a named insured on any of the policies.
[4] The regulation is in a subchapter titled Order of Benefit Determination Between Automobile Personal Injury Protection and Health Insurance. N.J.A.C. 11:3-37.1 to 37.14. However, N.J.A.C. 11:3-37.12 is not by its terms limited to cases where PIP coverage is secondary to health coverage. See N.J.A.C. 11:3-37.9. Moreover, if two PIP carriers are secondary to health coverage, it would appear that § 4.2 and § 11 would govern the relationship between the PIP carriers.
[5] This provision was enacted in 1983. L. 1983, c. 362, § 7. It was enacted in the same legislation which enacted § 4.2. L. 1983, c. 362, § 12.
[6] The current version of N.J.S.A. 39:6A-4a, enacted in 1990, seven years after § 4.2 was adopted, establishes a $250,000 limit per person per accident for medical expenses as a result of the 1990 amendments. L. 1990, c. 8, § 4. The 1990 amendment continues the reimbursement obligation of the Unsatisfied Claim and Judgment Fund after the PIP carrier has paid $75,000 in medical expense benefits. In this case we do not address the impact of § 4.2 and § 11 on the relationship among the primary PIP carrier, the secondary PIP carrier and the Fund, because Hartley's medical expenses were less than $75,000. It appears, however, that our interpretation of § 4.2 would postpone the Fund's duty to reimburse until the primary and secondary PIP carriers together had paid $150,000 in medical expense benefits.