690 A.2d 1074

RUTGERS CASUALTY INSURANCE COMPANY,[1] PLAINTIFF–
RESPONDENT, v. THE OHIO CASUALTY INSURANCE
COMPANY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 20, 1997—Decided April 1, 1997.

---

[1] For economy we have used a single caption.

250

Before Judges KING, CONLEY and LOFTUS.

*Stephen R. Dumser* argued the cause for appellants Ohio Casualty Ins. Co., West American Ins. Co., and Keystone Ins. Co. (*Gercke, Dumser & Feld,* attorneys; *John R. Gercke,* on the joint brief).

*Robert L. Messick* argued the cause for appellant HCM Claim Management Corp.

*Randi S. Greenberg* argued the cause for appellant Prudential Property & Casualty Ins. Co. (*Robert A. Auerbach,* attorney).

*Francis X. Ryan* argued the cause for appellant Allstate Ins. Co. and Computer Sciences Corp. (*Green, Lundgren & Ryan,* attorneys).

*Susan L. Moreinis* argued the cause for respondent.

The opinion of the court was delivered by

KING, P.J.A.D.

## I.

These ten consolidated cases arise from similar factual situations. The legal issue is the right of contribution between automobile insurance carriers paying Personal Injury Protection (PIP) benefits. In each case the person injured in an automobile accident was either the named insured or a resident relative of a named insured under a Rutgers Casualty Insurance Company (Rutgers) policy. Each Rutgers insured was injured while a pedestrian or while a passenger in a vehicle not owned by the Rutgers' insured. The defendant automobile insurance companies—Ohio Casualty, West American, Keystone, Prudential and HCM Claim Management Corporation—insured the vehicles actually involved in the accident. Each of Rutgers' insureds were also "other insureds" under defendants' automobile policies. *N.J.S.A.* 39:6A-4.

Rutgers paid its insureds PIP benefits and then sought "contribution" from the defendant insurance carriers under *N.J.S.A.* 39:6A-11 which states:

> If two or more insurers are liable to pay benefits under sections 4 and 10 of this act for the same bodily injury, or death, of any one person, the maximum amount payable shall be as specified in sections 4 and 10 if additional first party coverage applies and any insurer paying the benefits shall be entitled to recover from each of the other insurers, only by inter-company arbitration or inter-company agreement, an equitable pro-rata share of the benefits paid.

The defendant carriers refused to contribute under *N.J.S.A.* 39:6A-11 because of an "exclusion" in each of their policies. Adopting the parties' expression, we refer to these as the "follow-the-family" exclusion provisions. The Keystone exclusion is typi-

cal of the exclusions used by Ohio Casualty, West American, Allstate and HCM. The Keystone policy provides:

**Exclusions**

The insurance under this endorsement does not apply to *bodily injury*:

. . .

(h) to any person other than the **named insured** or **relative** if that person is entitled to New Jersey personal injury protection coverage as a named insured or relative under the terms of another policy;

(i) to any **relative** if that person is entitled to New Jersey personal injury protection coverage as a named insured under the terms of another policy.

The Prudential policy did not contain a typical "follow-the-family" exclusion but relied upon the following provision to deny contribution:

**Conditions**

. . .

**3. Multiple Policies Applicable to One Accident; Non-duplication of Benefits; Priority of Complying Policies.**

. . .

This insurance applies on a primary basis to **bodily injury** to the **named insured** and any **relative** who is not named insured in another policy, and on a secondary basis to all other **eligible** injured persons. Similarly, the basic personal injury protection coverage provided by other complying policies applies on a primary basis to **bodily injury** to those persons who are named insureds under such policies and their relatives. If an **eligible injured person** to whom this insurance applies on a secondary basis has other basic personal injury protection coverage under another complying policy applicable to **bodily injury** on a primary basis, all claims for basic personal injury protection benefits shall first be made against the insurer issuing the other complying policy. *No basic personal injury protection benefits shall be due and payable under this insurance unless the other insurer fails to pay such benefits by reason of insolvency and the Company has been given written notice by the claimant of such failure.* (emphasis added).

We construe this clause as identical in impact to the typical "follow-the-family" exclusion.

Interestingly, Rutgers' policy also contains a similar "follow-the-family" exclusion:

**EXCLUSIONS:**

The insurance under this endorsement does not apply to bodily injury:

. . .

8. To any person other than the named insured or relative if that person is entitled to New Jersey personal injury protection coverage as a named insured or relative under the terms of another policy.

9. To any relative if that person is entitled to New Jersey personal injury protection coverage as a named insured under the terms of another policy.

The Rutgers' policy also contains a provision regarding contribution:

3. *Multiple Policies Applicable to One Accident—Non-duplication of Benefits; Priority of Complying Policies:*

. . .

If an eligible injured person under this insurance policy is also an eligible injured person under other complying policies, the Company paying benefits to such person shall be entitled to recover from each of the other insurers an equitable pro-rata share of the benefits it has paid. The pro-rata share is the proportion that the Company's liability bears to the total of all applicable limits.

The Ohio Casualty, West American, Keystone, HCM and Allstate policies have almost identical contribution provisions. The Prudential policy apparently does not have a contribution provision.

After the defendants denied Rutgers' requests for contribution, Rutgers instituted these actions in March 1994 seeking a declaratory judgment of entitlement to contribution and an order to compel arbitration. On cross-motions for summary judgment the Law Division judge ruled in favor of Rutgers and ordered "pro-rata share" contribution from defendants on these PIP claims.

## II.

In 1972 the Legislature enacted the New Jersey Automobile Reparation Reform Act, *N.J.S.A.* 39:6A–1 to –35(Act), also commonly referred to as the "No Fault Act." *See, e.g., Hermann v. Rutgers Casualty Ins. Co.,* 221 *N.J.Super.* 162, 166, 534 *A.*2d 51 (App.Div.1987). "The purpose and intent of this act is to establish an informal system of settling tort claims arising out of automobile accidents in an expeditious and least costly manner, and to ease the burden and congestion of the State's courts." *N.J.S.A.* 39:6A–24. The "act shall be liberally construed so as to effect the purpose thereof." *N.J.S.A.* 39:6A–16. *Amiano v. Ohio Cas. Ins. Co.,* 85 *N.J.* 85, 90, 424 *A.*2d 1179 (1981).

The Act mandates compulsory automobile insurance coverage and every policy must include PIP coverage for medical expenses (up to $250,000 per person), income continuation, and death benefits, regardless of fault. The Act mandates that:

> Every automobile liability insurance policy ... shall provide personal injury protection coverage, ... for the payment of benefits without regard to negligence, liability or fault of any kind, to the named insured and members of his family residing in his household who sustained bodily injury as a result of an accident while occupying, entering into, alighting from or using an automobile, or as a pedestrian, caused by an automobile or by an object propelled by or from an automobile, to other persons sustaining bodily injury while occupying, entering into, alighting from or using the automobile of the named insured, with the permission of the named insured, and to pedestrians, sustaining bodily injury caused by the named insured's automobile or struck by an object propelled by or from such automobile.
>
> [*N.J.S.A.* 39:6A–4.]

*N.J.S.A.* 39:6A–10 also requires insurers to make additional, optional PIP coverage available to the named insured and resident relatives living in the household of an insured.

In 1983 the Legislature enacted *N.J.S.A.* 39:6A–4.2. This amendment established which PIP policy was "primary," *L.* 1983, *c.* 362, § 12, effective October 4, 1983. This provision provides in pertinent part:

> [T]he personal injury protection coverage of the named insured shall be the primary coverage for the named insured and any resident relative in the named insured's household who is not a named insured under an automobile insurance policy of his own.[2]
>
> [*N.J.S.A.* 39:6A–4.2.]

The Act permits insurers to exclude an insured from PIP benefits where the claimant's conduct contributed to personal injuries or death while (1) "committing a high misdemeanor or felony or seeking to avoid lawful apprehension or arrest by a police officer;" or (2) "acting with specific intent of causing injury or damage to himself or others." *N.J.S.A.* 39:6A–7(a). The Act

---

[2] The 1990 amendment to *N.J.S.A.* 39:6A–4.2, *L.* 1990, *c.* 8, § 5 added the last sentence precluding duplicate coverage: "No person shall recover personal injury protection benefits under more than one automobile insurance policy for injuries sustained in any one accident."

also permits insurers to exclude a person from PIP benefits if at the time of the accident the claimant was (1) "the owner or registrant of an automobile registered or principally garaged in this State that was being operated without personal injury protection coverage;" or (2) "occupying or operating an automobile without the permission of the owner or other named insured." *N.J.S.A.* 39:6A–7(b).

The statute countenances no other true exclusions from PIP benefits. As we have noted, *N.J.S.A.* 39:6A–11 provides for "equitable pro-rata" contribution "if two or more insurers are liable to pay" PIP benefits for the same bodily injury or death but "only by inter-company arbitration or inter-company agreement."

The nub of the dispute before us is whether use of the "follow-the-family" exclusion to avoid continuous loss transfers by way of contribution after PIP payments is a valid arrangement under the PIP no-fault statutory scheme. The defendant carriers, seemingly representative of most of the automobile liability carriers doing business in this State, stress that these contribution transfers, which occur after the PIP claims are settled and paid, are inefficient and serve only to increase transactional costs. The defendant carriers argue that if the "follow-the-family" exclusionary scheme applies, each carrier will pay its own insured and resident relative and close its file. Large numbers of transactions over time will eventually even out losses and eliminate the inefficiency and transactional costs of contribution transfers. Multiple carriers would not maintain duplicate files. Carriers would no longer have to continuously justify loss payment to an overseeing contributing carrier, perhaps reducing delay in loss payments to the insured beneficiary. Under the interpretation of the statutory scheme pressed by defendant carriers, administrative costs and transfer expenses are reduced, presumably a benefit to the premium-paying public, without any diminution of benefits to injured insureds.

The Law Division judge correctly perceived that there is an ongoing implicit, if not explicit, agreement between many insurers

not to seek contribution under § 11 but that not all insurers were abiding by that agreement. The judge said that the follow-the-family "exclusion is tantamount to an agreement of various insurance companies. I say agreement, because it appears that the insurance companies agreed to include this provision within the scope of their insurance policies."

Also suggestive of an industry understanding or agreement manifested by conduct is Allstate's letter to Rutgers on April 1, 1994, a typical carrier's "turn-down" response to Rutgers' claim for contribution, which we find in this record:

> In response to your letter dated January 19, 1994 and memo dated March 16, 1994, please be advised that we cannot honor any contribution. The reason for not honoring your claim is that after the hearing of the two cases, *Federal Insurance Company v. Liberty Mutual* [190 *N.J.Super.* 605, 464 A.2d 1197 (App.Div.1983)] and *Selected Risks v. Allstate Insurance Company* [179 *N.J.Super.* 444, 432 A.2d 544 (App.Div.1981)], all the insurance companies in the State of New Jersey came to a gentlemen's agreement not to pursue these types of contribution cases with each other. This can be confirmed with the arbitration forum. If you disagree with the above, please file case with the arbitration forum.

None of the parties have claimed that any formal written agreement to eschew pursuing contribution for PIP claims exists among all or some of the carriers selling automobile insurance in this State.

### III.

 We find nothing inimicable to the PIP statutory scheme in the "follow-the-family" exclusion. This exclusion is not a true exclusion in the sense that the insurers seek to exclude benefits to the injured person. It only excludes contribution claims by the carrier paying benefits to its named insured or named insured's resident relative where the injury involved a car not insured by paying carrier. We find this exclusion not in conflict with *N.J.S.A.* 39:6A–7, which sets forth the permissible, true exclusions of benefits to injured insureds, but only where the insureds engaged in criminal activity or owned, occupied or operated an uninsured vehicle. Any other true exclusion of benefits to an injured person is prohibited as a violation of public policy. *Her-*

*mann v. Rutgers Casualty Ins. Co.,* 221 *N.J.Super.* 162, 534 *A.*2d 51 (App.Div.1987) (attempted territorial exclusion invalid); *accord Fellippello v. Allstate Ins. Co.,* 172 *N.J.Super.* 249, 411 *A.*2d 1137 (App.Div.1979), *certif. denied,* 85 *N.J.* 481, 427 *A.*2d 574 (1980). Here, of course, the injured party is not excluded from benefits. Once the injured party is paid under the "primacy of coverage" section, *N.J.S.A.* 39:6A–4.2, the matter is closed; only contribution is excluded.

Nor do we perceive the "follow-the-family" exclusion as an attempt by the insurance industry to impermissibly undermine or modify *N.J.S.A.* 39:6A–11. An historical review of this issue is useful to understanding. In 1981, before the enactment of *N.J.S.A.* 39:6A–4.2, we decided a case where the issue was "whether an automobile policy can legally contain a provision limiting liability for PIP benefits where the injured party has another source from which PIP benefits can be obtained." *Selected Risks Ins. Co. v. Allstate Ins. Co.,* 179 *N.J.Super.* 444, 446, 432 *A.*2d 544 (App.Div.), *certif. denied,* 88 *N.J.* 489, 443 *A.*2d 705 (1981). At the time of his accident Boland was insured by two insurance companies and entitled to PIP benefits under both policies: Boland was personally insured by Selected. He was also insured through his mother's Allstate policy as a resident relative. Selected paid Boland PIP benefits and then sought 50% contribution from Allstate. *Id.* at 446–47, 432 *A.*2d 544. Allstate denied coverage and refused to make contribution because of a provision in its policy which excluded coverage if the claim arose while the insured, or resident relative, was "occupying, using, entering into alighting from a private passenger automobile under this policy, if he is required to maintain automobile liability insurance with respect to the automobile under the New Jersey Automobile Reparation Reform Act." *Id.* at 447, 432 *A.*2d 544. Considering *N.J.S.A.* 39:6A–4 and –11, we held that

Defendant's insurance policy provision conflicts with the statutory mandate by attempting to utilize an "escape" clause. This it cannot do under the language of *N.J.S.A.* 39:4–6A–11, which specifically provides that the insurers share the costs on a pro rata basis. Any attempt by an insurance company to dilute or diminish

statutory provisions applicable to its contract of insurance is contrary to public policy. *Id.* at 450, 432 *A.*2d 544 (citation omitted).

We remanded the case to the Law Division to enter judgment in favor of Selected in the amount of 50% of the PIP benefits paid to Boland.

Two years later in *Federal Ins. Co. v. Liberty Mutual Ins. Co.,* 190 *N.J.Super.* 605, 464 *A.*2d 1197 (App.Div.1983), we addressed a similar issue. At the time of the accident Ellmers was insured by Liberty Mutual, insurer of the leased car which he was driving, and by Federal, his wife's insurer. *Id.* at 606, 464 *A.*2d 1197. The issue was whether one insurance company was the "primary" insurer under the Act or whether Federal and Liberty Mutual were required to share the obligation under *N.J.S.A.* 39:6A–11. Federal paid Ellmers partial PIP benefits but he initiated a lawsuit seeking additional benefits. Federal filed a third-party complaint against Liberty and Ellmers then claimed benefits directly against Liberty. "The effect of the decision below was that Federal's coverage would have to be exhausted before Liberty became obligated to pay any additional unpaid PIP benefits to him." *Id.* at 608, 464 *A.*2d 1197. We discussed the difference between first-party insurance and second-party insurance and stated that "PIP coverage is generally referred to as first-party coverage." *Id.* at 610, 464 *A.*2d 1197. "First-party coverage is said to be coverage for an insured's own loss or injury ... third-party coverage which insures against liability of the insured for injury to a third party or his property." *Ibid.* We addressed *N.J.A.C.* 11:3–7.4 [3] and a policy provision stating that the Liberty policy was "secondary" coverage to persons other than the named insureds and resident relatives. *Id.* at 610–11, 464 *A.*2d 1197. We found this regulation and policy provision contrary to *N.J.S.A.* 39:6A–11. *Id.* at 610–11, 464 *A.*2d 1197.

---

[3] *N.J.A.C.* 11:3–7.4 stated, "The policy form or endorsement providing personal injury protection benefits shall provide that Section 4 benefits shall be afforded by the insurer of the injured party." The *Federal* court regarded this regulation as ambiguous. 190 *N.J.Super.* at 610, 464 A.2d 1197. This regulation is no longer in effect.

> [I]t is difficult to say that the Legislature intended to make distinctions between classes of covered persons for the purpose of sharing PIP losses among carriers. Section 11 bears no hint of that intention. Yet it was adopted in its present form in the face of a known problem and known proposals for a different approach.
>
> [*Id.* at 612, 464 *A.2d* 1197.]

We also stated:

> Saying that a named insured or his relatives living in his household should seek benefits first from the named insured's carrier does not deal with that carrier's right to contribution from other insurers who are liable on the risk, although dictum concerning primary and secondary coverage implies a different result than we reach here.
>
> [*Id.* at 613, 464 *A.2d* 1197.]

We concluded that Federal was entitled to contribution from Liberty and to the extent that the regulation and Liberty's policy conflicted with that result, they were invalid. *Id.* at 614, 464 *A.2d* 1197.

Then in 1983 the Legislature enacted *N.J.S.A.* 39:6A–4.2, *L.* 1983, *c.* 362, § 12, which stated in pertinent part, as we have said, that the PIP coverage of the named insured is "primary."

> [T]he personal injury protection coverage of the named insured shall be the primary coverage for the named insured and any resident relative in the named insured's household who is not a named insured under an automobile insurance policy of his own.
>
> [*N.J.S.A.* 39:6A–4.2.]

After the adoption of § 4.2, the *Selected/Federal* issue resurfaced in *Cokenakes v. Ohio Casualty Ins. Co.*, 208 *N.J.Super.* 308, 505 *A.2d* 243 (Law Div.1985). In *Cokenakes*, Ohio Casualty insured the plaintiff who was injured while driving a leased car insured by Liberty Mutual. Liberty moved for summary judgment asserting that Ohio Casualty was the "primary" insurer. Ohio Casualty asserted that the insurers were "co-insurers" and that it was entitled to contribution. The principal issue in *Cokenakes* was whether the newly-enacted *N.J.S.A.* 39:6A–4.2 was prospective or retrospective. Judge Haines stated:

> The present case illustrates the problem that occurs when there is no primary insurer. Persons injured in automobile accidents, clearly entitled to PIP benefits, are not paid by reason of disputes between co-equal insurers. It is reasonable to believe that the Legislature intended to correct this circumstance when it adopted Section 4.2.
>
> [*Id.* at 313, 505 *A.2d* 243.]

In reasoning that § 4.2 was retroactive in attempting to solve the priority problem, the judge stated:

> Section 11 required arbitration or agreement with respect to sharing benefits before and after the passage of Section 4.2. Thus, Ohio has the same Section 11 rights with or without the new legislation.... Section 4.2 merely designates the carrier first required to pay PIP benefits, preserving its right of contribution from other insurers also liable for such payments. The Legislature thus provided a remedy for persons injured in automobile accidents when multiple insurers are unable to agree as to the PIP contributions to be made by each. Section 4.2 promotes a primary intent of the No–Fault Law: the prompt payment of PIP benefits. Victims of automobile accidents no longer need wait for multiple insurers to resolve their differences before these important benefits become payable.
>
> [*Id.* at 313–14, 505 *A.*2d 243.]

We then readdressed the *Selected/Federal/Cokenakes* issue in *United States Fidelity & Guaranty Co. v. Industrial Indemnity Co.*, 264 *N.J.Super.* 379, 624 *A.*2d 1014 (App.Div.), *certif. denied*, 134 *N.J.* 484, 634 *A.*2d 530 (1993), (*USF & G*). In *USF & G*, Hartley was injured in an accident while operating an automobile for her employer. USF & G insured Hartley's father's vehicle; as she was living with her father at the time of the accident. Hartley's employer was insured by Industrial Indemnity Co. (Indemnity). USF & G started a Law Division action to compel Indemnity to participate in arbitration pursuant to *N.J.S.A.* 39:6A–11. "Indemnity contended that USF & G's coverage was 'primary' under *N.J.S.A.* 39:6A–4.2 ... and, therefore, Indemnity had no responsibility to pay to USF & G a pro rata share of the PIP benefits under § 11." *Id.* at 381, 624 *A.*2d 1014.

At issue in *USF & G* was the meaning of "primary" in *N.J.S.A.* 39:6A–4.2 and what effect § 4.2 has upon § 11. Referring to the earlier cases, *Selected* and *Federal*, we stated,

> In those decisions, we held that § 11 means what it says, that there is contribution between two or more insurers liable to pay PIP benefits. The amount of contribution is to be determined through arbitration based on the standard of "an equitable pro rata share of the benefits paid."
>
> [*USF & G*, 264 *N.J.Super.* at 382, 624 *A.*2d 1014.]

In *USF & G* the parties made arguments similar to arguments made in the case before us:

Indemnity contends that USF & G has no right of contribution from Indemnity because "primary" means that USF & G pays all the PIP medical benefits up to the $75,000 "limit" established in the current version of *N.J.S.A.* 39:6A–4a. At best, Indemnity contends, it is obligated to provide excess coverage after USF & G limits have been exhausted. USF & G contends that the carrier identified as "primary" in § 4.2 must pay the insured's PIP benefits initially and may seek contribution under § 11 from other available PIP coverage. We agree with USF & G's contention.

[*Id.* at 382–83, 624 *A*.2d 1014.]

We rejected Indemnity's argument that: "When it enacted § 4.2, the Legislature did not eliminate or modify § 11. Indemnity's interpretation of § 4.2 would render § 11 virtually meaningless, for § 11 would apply only if two or more carriers were "primary" under § 4.2, an unlikely, though not impossible, event." *Id.* at 383, 624 *A*.2d 1014. In reaching this decision we relied upon a still-effective regulation, *N.J.A.C.* 11:3–37.12(c).[4] We specifically rejected interpreting "primary" as meaning "primary" in the "primary-excess" sense. *Id.* at 384, 624 *A*.2d 1014. Instead, we agreed with *Cokenakes'* reasoning and held: "We are persuaded that the purpose of § 4.2 was to identify a source for the *immediate* payment of PIP benefits, thereby insulating covered persons from delays caused by squabbles between insurers." *Id.* at 384, 624 *A*.2d 1014.

In a recent per curiam opinion we reaffirmed the holding of *USF & G* stating that, "[a] carrier is 'primary' but may nevertheless seek contribution under section 11 even though the PIP payments did not exceed the policy limits." *Rutgers Casualty Ins.*

---

[4] *N.J.A.C.* 11:3–37.12(c) provides:

If an automobile policy PIP plan provides benefits for medical expenses for an insured who is eligible for medical expenses benefits under more than one automobile policy PIP plan, the automobile insurer of the paying PIP plan may seek equitable pro rata contributions from the other automobile policy PIP plan(s) for the benefits actually paid by the paying PIP plans. Although this regulation is in the subchapter titled "Order of Benefit Determination Between Automobile Personal Injury Protection and Health Insurance," this court noted that this regulation was not limited to cases where PIP coverage is secondary to health coverage. *USF & G, 264 N.J.Super.* at 383 n. 4, 624 *A*.2d 1014.

*Co. v. New Jersey Manufacturers Ins. Co.*, 294 *N.J.Super.* 379, 683 *A.2d* 581 (App.Div.1996). And in *Martin v. Prudential Ins. Co.*, 255 *N.J.Super.* 524, 529, 605 *A.2d* 762 (App.Div.1992), we expressed, although in a different context, that "*N.J.S.A.* 39:6A–4.2 was enacted to preclude redundant recovery." But most importantly, none of the cases decided since the adoption of § 4.2 in 1983 have involved the validity or impact of a "follow-the-family" or similar exclusion affecting contribution.

## IV.

■ We agree with the defendant carriers' contention that their "follow-the-family" exclusion does not textually violate § 11, which only applies when "two or more insurers *are liable* to pay benefits under sections 4 and 10 of this act." Under the "follow-the-family" exclusion, the defendant carriers are indeed not liable to pay PIP benefits.

Rutgers' contention for contribution is reminiscent of the long-ago discarded concept of subrogation for PIP benefits among carriers. Such subrogation was abolished as of June 20, 1974. *See N.J.S.A.* 39:6A–9 which made subrogation unavailable after two years. *L.* 1972, *c.* 708, §. 9, amended by *L.* 1972, *c.* 203, § 7. The leading contemporary authority on the no-fault scheme said:

> Spokesmen for the insurance industry expressed reluctance as to the economic benefit of subrogation in that it results in the shifting of dollars and papers among insurers with little to be gained.
>
> The subrogation provisions of the Act are needed for a period of time in order to compile statistics for the rate making process. Therefore, the originally introduced assembly bill was amended to provide that two years after the effective date of the Act, the subrogation provisions of the Act shall become inoperative.
>
> [*Mario A. Iavicoli, No Fault & Comparative Negligence in New Jersey*, § 50 at 117 (1973).]

As the defendant carriers' counsel point out, § 11 still has vitality for contribution between responsible carriers where both policies apply and no exclusion of contribution operates, even after the adoption of § 4.2 in 1983. The defendant carriers provide these two examples in their brief:

[S]uch a situation would arise when a minor resides with each of two divorced parents in separate households. The child would be a resident relative of each insured parent. Additionally, a minor may live in a household where each parent or sibling is insured under a separate policy of automobile insurance. In either event, Section 11 would effectuate the intent of the Legislature in providing for contribution when the two or more liability insurance carriers owe PIP benefits on a primary basis and only one such carrier actually pays out such benefits.

Other examples may be conceivable. Section 11 then retains meaning, but in a much smaller number of cases, and provides for contribution where two or more PIP coverages are available, notwithstanding § 4.2's primacy doctrine.

In a cognate context, where contribution was denied by arbitrators before § 4.2 was effective, we reversed the Law Division and reinstated an arbitration award which had denied PIP contribution because, as Judge Simpson, said: "Here the arbitrators may well have recognized accepted claim practices to avoid a cumbersome and uneconomic shifting of dollars from an insurance company to another, as in the case of subrogation." *N.J. Mfrs. Ins. Co. v. Travelers Ins. Co.*, 198 *N.J.Super.* 9, 13, 486 *A.*2d 339 (App.Div. 1984). We conclude that the "follow-the-family" exclusion well resonates this principle and is entirely consistent with the text of the statute and the legislative purpose, "to establish an informal system of settling tort claims arising out of automobile accidents in an expeditious and least costly manner, and to ease the burden and congestion of the State's courts." *N.J.S.A.* 39:6A–24.

We find that the defendant carriers have the better of the argument. We recognize the "follow-the-family exclusion" as efficacious. It better realizes and coordinates the primacy policy of § 4.2, the equitable contribution policy of § 11 when two or more PIP coverages inexorably apply, and most importantly, the policy of transactional efficiency—obviously the legislative grail of the no-fault scheme.

Reversed.