765 A.2d 266

COUNTRY–WIDE INSURANCE COMPANY, PLAINTIFF/AP-
PELLANT, v. ALLSTATE INSURANCE COMPANY, DE-
FENDANT/RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 18, 2000—Decided January 23, 2001.

Before Judges NEWMAN, BRAITHWAITE and WELLS.

*Amirali Y. Haidri*, argued the cause for appellant.

*Lindsay K. O'Shaughnessy*, argued the cause for respondent (*McDermott & McGee* attorneys; *David J. Dickinson*, on the brief).

The opinion of the court was delivered by

WELLS, J.A.D.

On leave granted, plaintiff Country–Wide Insurance Company appeals *nunc pro tunc* from an order denying its application to enjoin arbitration. The same order directed arbitration to proceed between it and defendant Allstate Insurance Company on Allstate's claim for reimbursement of personal injury protection (PIP) benefits. Those benefits were paid to James Donohue, a pedestrian, insured by Allstate.

The underlying facts and procedural history are undisputed. On January 30, 1997, a motor vehicle accident occurred when Zhang Yuan Gao, a New York resident, struck the pedestrian, James Donohue. Gao was insured by Country–Wide, a New York based insurance company licensed to do business in New Jersey. Country–Wide acknowledges that it is subject to the insurance laws of this state, because it is licensed to do business in this state, and that it is required under *N.J.S.A.* 17:28–1.4, the so called "deemer statute" [1], to provide PIP benefits pursuant to *N.J.S.A.* 39:6A–4. As a result of the accident, Donohue sustained bodily injuries and incurred medical expenses allegedly exceeding $75,000, which were paid by Allstate pursuant to *N.J.S.A.* 39:6A–4.

---

[1] The statute provides: Any insurer authorized to transact ... automobile or motor vehicle insurance business in this state ... which sells a policy providing automobile or motor vehicle insurance coverage ... in any other state ... shall include in each policy coverage to satisfy at least the ... personal injury protection benefits coverage pursuant to section 4 of P.L.1972, c. 70 (C.39:6A–4) ... whenever the automobile or motor vehicle insured under the policy is used or operated in this State.

Allstate sought contribution from Country–Wide for its PIP outlay pursuant to *N.J.S.A.* 39:6A–11. Country–Wide refused payment, claiming that it was not required to participate in inter-company arbitration.

On May 14, 1998, Country–Wide filed a complaint and order to show cause seeking a declaration that it was not required to contribute to PIP benefits paid by Allstate. Country–Wide also sought to permanently enjoin Allstate from instituting arbitration for any claim for contribution of such benefits.

On June 12, 1998, a hearing was held on the order to show cause. At the conclusion of the hearing, Country–Wide's application for a permanent injunction was denied and an order was entered compelling the parties to proceed with arbitration, pursuant to *N.J.S.A.* 39:6A–11. The trial court reasoned that because Country–Wide is required to carry PIP coverage payable to an injured pedestrian under *N.J.S.A.* 39:6A–4, it would also be required, under *N.J.S.A.* 17:28–1.4, to pay *pro rata* contribution to a carrier who under its policy paid PIP benefits.

On August 6, 1999, Country–Wide filed a motion to supplement the record and for reconsideration. After Allstate submitted opposition, the court issued an order denying reconsideration and allowing Country–Wide to supplement the record with discovery documents showing that Allstate includes in its automobile insurance policies a "follow-the-family" exclusion in substantially the form recited in *Rutgers Cas. Ins. Co. v. The Ohio Cas. Ins. Co.,* 299 *N.J.Super.* 249, 252, 690 *A.*2d 1074 (App.Div.1997), *aff'd,* 153 *N.J.* 205, 707 *A.*2d 1350 (1998).

To better understand Country–Wide's defense against Allstate's claim, we trace the history of inter-company PIP contribution claims. The statutory requirement set forth in *N.J.S.A.* 39:6A–11 that there be equitable *pro rata* reimbursement between carriers for PIP benefits is one of long standing. For many years, however, Allstate resisted payment of such contribution under this provision. Its early efforts failed. *See, e.g. Selected Risks Ins. Co. v. Allstate Ins. Co.,* 179 *N.J.Super.* 444, 432 *A.*2d 544 (App.Div.

1981), *cert. denied*, 88 *N.J.* 489, 443 *A.*2d 705 (1981). Nonetheless, it persevered, and ultimately, based on an informal "gentlemen's agreement" among New Jersey carriers acknowledged in *Rutgers Cas. Ins. Co., supra,* 299 *N.J.Super.* at 256, 690 *A.*2d 1074, and backed by a clause in their respective policies, such contribution generally became obsolete. That clause, which became known as the "follow-the-family" exclusion, provides:

[T]he insurance under this endorsement does not apply to bodily injury:

. . . .

(h) to any person other than the named insured or relative if that person is entitled to New Jersey personal injury protection coverage as a named insured or relative under the terms of another policy;

(i) to any relative if that person is entitled to New Jersey personal injury protection coverage as a named insured under the terms of another policy.

Indeed, within eight months after the *Rutgers* decision in 1997, the Legislature also amended the Automobile Reparation Act by adding the clause. *N.J.S.A.* 39:6A–7b(3). The following year the Supreme Court affirmed, *per curiam,* the *Rutgers* decision. *Rutgers Cas. Ins. v. Ohio Cas. Ins.,* 153 *N.J.* 205, 707 *A.*2d 1350 (1998).

Based on this history Country–Wide urges that it would be inequitable for this court to permit Allstate to seek contribution when Allstate would not be required to pay contribution under *Rutgers,* had Country–Wide paid Donohue under its PIP coverage.[2] Country–Wide asserts that it is a New York carrier and could not, under New York law, write a "follow-the-family" exclu-

---

[2] The situation Country–Wide posits is hypothetical. It is clear that under *N.J.S.A.* 39:6A–4.2, Allstate is the "primary" carrier on the facts of this case in the sense that it is first called upon to pay the injured pedestrian. *USF & G v. Industrial Indem. Co.,* 264 *N.J.Super.* 379, 384, 624 *A.*2d 1014, *certif. denied,* 134 *N.J.* 484, 634 *A.*2d 530 (1993). There is thus no real circumstance here under which Country–Wide would have been called upon to pay PIP. However, we acknowledge that had Donohue owned a car principally garaged in New York covered by a Country–Wide policy and Country–Wide had paid him PIP under Section 4 as the primary carrier, it would not be able to recover contribution therefor from Allstate under *Rutgers* and *N.J.S.A.* 39:6A–7b(3).

sion into its policies. It posits its situation as one where, under *N.J.S.A.* 17:28–1.4, it must, as the trial court held, pay PIP to the same extent as a New Jersey carrier but it is unable to join the "gentlemen's agreement" or to escape *pro rata* contribution where a New Jersey carrier could do so.

■ Country–Wide's position is grounded upon the language of *N.J.S.A.* 39:6A–11 requiring "equitable" *pro rata* contribution and upon judicial estoppel. The statute provides:

> If two or more insurers are liable to pay benefits under section 4 and 10 of this act for the same bodily injury, or death of any one person, ... any insurer paying the benefits shall be entitled to recover from each of the other insurers, only by inter-company arbitration or inter-company agreement, an equitable pro-rata share of the benefits paid.

It claims that there can be no equity where there is no mutuality of obligation. Whereas Allstate could avoid *pro rata* contribution had Country–Wide paid Donohue, it is asserted there is no mutuality. It further urges that Allstate's persistent resistance before the courts to PIP contribution precludes it from now asserting a right to contribution relief in those same courts against a small competitor from a foreign state.

■ We disagree with these arguments. First, Country–Wide reads the word "equitable" in Section 11 overbroadly. In context, the word simply means that the amount of contribution of the carriers liable for PIP under the facts of a particular case shall be apportioned fairly among those carriers. *USF & G v. Industrial Indem. Co.*, 264 *N.J.Super.* at 379, 384, 624 *A.*2d 1014, *cert. denied,* 134 *N.J.* 484, 634 *A.*2d 530 (1993). It does not mandate a mutuality of obligation in the sense that if a carrier is not liable to pay contribution in one case it may not be able to collect it in another.

Second, the argument ignores the continuing unambiguous legislative declaration of *N.J.S.A.* 39:6A–11 requiring contribution. In *Rutgers Cas. Ins. Co., supra,* 299 *N.J.Super.* at 263, 690 *A.*2d 1074, we quoted two examples of Section 11's continuing viability. There are doubtless other examples. We held there that "the follow-the-family" exclusion does not textually violate Section 11,

which only applies when "two or more insurers are liable to pay benefits under Sections 4 and 10 of the act." *Id.* at 262, 690 *A.*2d 1074. In this case, in the absence of a "follow-the-family" exclusion in its policy, Country–Wide simply remains liable for pro rata contribution toward the PIP benefits Allstate paid. The fact that Country–Wide's policy does not include a "follow-the-family" exclusion and could not include one under New York law is of no consequence in New Jersey, where the accident happened. Mutuality of obligation among competing insurance carriers is not the touchstone of public policy in the arena of providing immediate and prompt compensation to the victims of automobile injury.

*N.J.S.A.* 39:6A–4.2 (declaring the primacy of carriers obligated to pay PIP), together with Section 11, implements the legislative policy of insuring prompt payment of PIP claims without the delays incident to squabbles between companies as to which should first pay the injured person while preserving the basic right of reimbursement via contribution. *USF & G v. Industrial Indem. Co.,* 264 *N.J.Super.* at 384, 624 *A.*2d 1014. On the other hand, the "follow-the-family" exclusion and its statutory embodiment, *N.J.S.A.* 39:6A–7b(3), furthers the policy of eliminating or reducing the transactional costs of contribution in most cases. The two provisions are not mutually exclusive, nor are they contradictory.

Country–Wide points to certain observations we made in *IFA Ins. Co. v. Atlantic Mut. Ins. Co.,* 331 *N.J.Super.* 217, 221, 751 *A.*2d 610 (App.Div.2000), as supporting its reasoning that to compel contribution in this case would be inequitable. In *IFA,* an employee was injured while driving a company car with PIP coverage issued by Atlantic Mutual. That employee was, however, paid PIP by IFA, the insurer of his own personal vehicle. When IFA sought contribution under Section 11, Atlantic Mutual asserted the follow-the-family exclusion in its policy. The trial court dismissed the claim citing *Rutgers* and we affirmed. We stated:

In this case, the person was injured while driving his employer's vehicle. The named insured on the policy covering the vehicle is a corporation (EMCO). Theoretically, the named insured cannot sustain injuries, nor can it have any

"resident relatives" capable of sustaining injuries while traveling in another person's automobile. In that sense, the PIP coverage appears somewhat illusory. In addition, it does not appear economically rational to charge the cost of PIP benefits to DiNicola's personal policy when as an employee, he uses his corporate vehicle for most of his driving needs. Under such circumstances, EMCO's carrier should expect to be obligated for PIP benefits. Arguably, it would seem more rational for a corporate policy to be interpreted to mean that the terms "named insured" and "resident family members" included "employees."

[*IFA Ins. Co.*, 331 *N.J.Super.* at 221, 751 *A.*2d 610].

But that observation goes to the definition of who should be included in the definition of "family" and not to a claim of inequity arising from a duty to pay contribution to a carrier which, itself, may never have to pay it. Accordingly, we do not concur that our comment advances Country–Wide's position in this case.

Nor does the law of judicial estoppel help Country–Wide. Its brief characterizes Allstate's position with respect to intercompany contribution claims for PIP benefits since the decision in *Selected Risks, supra,* 179 *N.J.Super.* 444, 432 *A.*2d 544 in 1981 as a "decades long crusade" against such claims. Whether that characterization is correct or not, it is clear that Allstate historically resisted paying such claims. Inferably, its status as one of the largest automobile insurers doing business in New Jersey was not without influence in putting a virtual end to such contribution. Allstate joined the gentlemen's agreement. It defended vigorously in court. Its purpose, however, a valid and lawful one, was plain enough: to reduce transactional costs incident to the pursuit of such claims. We have no doubt that Allstate, along with other carriers, has lost untold dollars in PIP reimbursement as the result of the gentlemen's agreement and the eventual fading of PIP reimbursement as an expression of public policy. But, presumably, these same carriers have also saved significant and mounting transactional costs. To that extent, the increased efficiency in the system of automobile reparations serves the public interest.

Judicial estoppel is a doctrine which prevents a party from asserting a position in one judicial forum and a contrary one in another. *See generally Cummings v. Bahr,* 295 *N.J.Super.* 374,

685 *A*.2d 60 (App.Div.1996). It is designed to eliminate "playing fast and loose" with the judiciary. *Id.* at 387, 685 *A*.2d 60, quoting *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 *F.* 3rd 355 (3rd Cir.1996). Allstate has not played fast and loose here. It has consistently been against PIP reimbursement. That it fought PIP contribution as a matter of strategic position over the years does not mean, however, in a particular case, it cannot collect PIP where the surviving statute expressly gives it a right to do so. Judicial estoppel has never been held to preclude a party from taking advantage of extant and applicable statutory provisions which in other forums it has questioned or lawfully sought to change. Country–Wide's remedy lies in the legislature.

Affirmed.